**David LaMar (Lawson) CLARK,
Appellant-Defendant,**

v.

**STATE of Indiana, Appellee-Plaintiff.**

**No. 3–877A201.**

Court of Appeals of Indiana,
Fourth District.

March 26, 1980.

Petersen & Muntz Law Office, Howard E. Petersen, Richard K. Muntz, LaGrange, for appellant-defendant.

Theodore L. Sendak, Atty. Gen., Terry G. Duga, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

MILLER, Presiding Judge.

David LaMar (Lawson) Clark was found guilty of first degree burglary [1] by a jury and sentenced to 10–20 years imprisonment. A proper appeal followed which raises several issues. However, due to our conclusion that evidence of Clark's confession and later participation in the search of the crime scene were products of an unlawful arrest and improperly admitted into evidence, we need only discuss that issue.

The evidence most favorable to the State disclosed that Dale Klopfenstein and his family lived in mobile home in LaGrange County. Between 5:00 and 5:30 p. m. on November 10, 1975, the family turned out the lights, locked their door and traveled two-tenths of a mile down the road to visit Dale's mother. About one hour later they noticed a light on at their home and returned to investigate. As they pulled out of the driveway they observed a car on the road stop, turn off its headlights and, as they approached, drive away. They discovered their home had been burglarized and several items were missing. Klopfenstein observed a shadow in the yard which might have been the family dog. The police were called but before they arrived Klopfenstein, armed with a gun, drove in search of the culprit. He located the car which he had

1. Ind.Code 35–13–4–4, now repealed. For current version see Ind.Code 35–43–2–1.

seen on the road previously and held the sole occupant of the car, later identified as Larry Swearengin, at gunpoint until the police arrived. The police took Swearengin into custody and searched the crime area finding some of the guns missing from the mobile home. No one saw any other person in the area at that time, but the search continued through the night.

The next morning, November 11, 1975, at approximately 6:50 a. m. Myron Sharp, an Indiana State Police Detective, saw the "lightly clad" Clark walking on a road about two and one-half miles from the scene of the burglary. He asked Clark for identification and was shown Clark's Florida driver's license. Clark was placed under arrest and transported to the LaGrange County Jail. Nothing in the record indicates the police knew at the time that Swearengin was in any way connected with Florida or defendant Clark.

While in transit Clark was read his *Miranda* rights from a card. The officers testified Clark was advised of his rights again before interrogation after arriving at the station. However, he was not asked to sign a written waiver form even though forms were available and it was the usual procedure to obtain a signature. That morning, Clark gave a confession and agreed to accompany the police officers to the scene of the burglary.

The first thing the next morning, Clark, without any additional *Miranda* warnings, accompanied the police to the Klopfensteins' property to search for the rest of the missing guns. They recovered the guns, although actually without help from Clark. They also found a pair of red gloves which matched the description of a pair Clark stated he had lost. After accompanying police to the scene, Clark had a preliminary hearing before a justice of the peace later that day.

■ Clark contends the testimony pertaining to his confession and his participation in the search for the guns was inadmissible as it was a product of an unlawful arrest. A warrantless arrest is unlawful if not supported by probable cause. *Morris v.*

*State*, (1980) Ind., 399 N.E.2d 740; *Dearing v. State*, (1979) Ind., 393 N.E.2d 167; *Gardner v. State*, (1979) Ind., 388 N.E.2d 513. Probable cause exists when at the time of the arrest the officer has knowledge of facts and circumstances which would warrant a man of reasonable caution and prudence to believe the defendant committed the criminal act in question. *Crane v. State*, (1978) Ind., 380 N.E.2d 89; *Barnes v. State*, (1978) Ind., 378 N.E.2d 839.

■ When Clark was arrested, the facts and circumstances known to the arresting officer were (1) a burglary had been committed the night before; (2) Dale Klopfenstein may have seen the shadow of a person in his yard; (3) one person in a vehicle had been arrested for the burglary and, (4) Clark a Florida resident, was walking down the road about twelve hours after the burglary and about two and one-half miles away from the crime scene. These facts and circumstances failed to connect Clark with the crime and, thus, probable cause did not exist when Clark was arrested. His arrest was unlawful.

■ However, an illegal arrest does not automatically render all inculpatory statements and actions inadmissible. The determining question is whether the inculpatory evidence was "obtained by exploitation of the illegality of (the) arrest". *Dunaway v. New York*, (1979) 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824. The factors used in this evaluation were set forth by the United States Supreme Court in *Brown v. Illinois*, (1975) 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416, as: 1) the temporal proximity of the arrest and the confession 2) the presence of intervening circumstances, and 3) the purpose and flagrancy of the official misconduct. The State, of course, has the burden of proving admissibility. *Dunaway v. New York, supra; Brown v. Illinois, supra.*

■ The mere giving of *Miranda* warnings to the accused does not per se render an inculpatory statement made after an illegal arrest admissible. This was explicitly set forth in *Brown v. Illinois, supra.*

The Illinois courts refrained from resolving the question, as apt here as it was in *Wong Sun* [*Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441], whether Brown's statements were obtained by exploitation of the illegality of this arrest. They assumed that the *Miranda* warnings, by themselves, assured that the statements (verbal acts, as contrasted with physical evidence) were of sufficient free will as to purge the primary taint of the unlawful arrest. *Wong Sun*, of course, preceded *Miranda*.

Thus, even if the statements in this case were found to be voluntary under the Fifth Amendment, the Fourth Amendment issue remains. In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken. *Wong Sun* requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be "sufficiently an act of free will to purge the primary taint." 371 U.S. at 486, 83 S.Ct. at 416. *Wong Sun* thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment.

If *Miranda* warnings, by themselves, were held to attenuate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted. See *Davis v. Mississippi*, 394 U.S. 721, 726–727, 89 S.Ct. 1394, 1397, 22. L.Ed.2d 676 (1969). Arrests made without warrant or without probable cause, for questioning or "investigation," would be encouraged by the knowledge that evidence derived therefrom could well be made admissible at trial by the simple expedient of giving *Miranda* warnings. Any incentive to avoid Fourth Amendment violations would be eviscerated by making the warnings, in effect, a "cure-all," and the constitutional guarantee against unlawful searches and seizures

could be said to be reduced to "a form of words."

The question whether a confession is the product of a free will under *Wong Sun* must be answered on the facts of each case. No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test. The *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, see *Johnson v. Louisiana*, 406 U.S. 356, 365, 92 S.Ct. 1620, 1626, 32 L.Ed.2d 152 (1972), and, particularly, the purpose and flagrancy of the official misconduct are all relevant.

*Brown v. Illinois, supra* at 600–604, 95 S.Ct. at 2260–2262.

Neither does the giving of a prior involuntary statement alone render a subsequent statement inadmissible.

A prior involuntary statement may render a second or subsequent statement inadmissible:

> "Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed."

*U. S. v. Bayer*, (1947), 331 U.S. 532 at 540, 67 S.Ct. 1394 at 1398, 91 L.Ed. 1654 at 1660. However, a prior involuntary confession does not render subsequent statements inadmissible *per se*.

> "But this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after these conditions have been removed."

*U. S. v. Bayer, supra*, 331 U.S. at 541, 67 S.Ct. at 1398, 91 L.Ed. at 1660. Neither

does the mere advisement of *Miranda* rights necessarily purge the taint of circumstances surrounding the previous confession. *Brown v. Illinois*, (1975) 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416.

In order for a subsequent confession to be admissible there must be a break in the chain of events sufficient to insulate the statement from that which went before. *Clewis v. Texas*, (1967) 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423; *Leyra v. Denno*, (1954) 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948. The totality of the circumstances should be reviewed in determining the admissibility of a subsequent statement, but the U.S. Supreme Court has suggested three primary factors for scrutiny: (1) the temporal proximity of the illegality and the confession; (2) the presence of intervening circumstances; and (3) the flagrancy of the official misconduct. *Brown v. Illinois, supra.*

*Hendricks v. State*, (1978) Ind., 371 N.E.2d 1312, 1314, *cert. den.* 436 U.S. 961, 98 S.Ct. 3079, 57 L.Ed.2d 1127.

▮ Here we must determine if Clark's first statement was obtained by exploitation of the illegal arrest and further, if there was a sufficient break in the chain of events to render the testimony of his subsequent statements and actions at the crime scene admissible.

In *Dunaway v. New York, supra*, a police detective ordered Dunaway picked up (the Court held this was an arrest) for questioning about a murder following the detective's receipt of information which was insufficient to obtain a warrant. After being driven to police headquarters, Dunaway was read his *Miranda* rights and questioned. Within an hour, he waived counsel, made inculpatory statements and drew incriminating sketches. The next day he made a second, more complete statement. The U.S. Supreme Court, after considering the factors set forth in *Brown v. Illinois, supra*, held all the statements and sketches should have been suppressed since they were obtained by exploitation of the illegality of his arrest.

Petitioner was . . . admittedly seized without probable cause in the hope that something might turn up, and confessed without any intervening event of significance. (n. 20 The cases are even parallel in that both Brown and petitioner made subsequent statements, see n. 2, *supra; Brown v. Illinois, supra.* 422 U.S., at 595–596, [95 S.Ct. at 2257–2258], which in each case were "clearly the result and the fruit of the first." *Id.*, at 605, and n. 12, [95 S.Ct. at 2262].). . . . No intervening events broke the connection between petitioner's illegal detention and his confession. To admit petitioner's confession in such a case would allow "law enforcement officers to violate the Fourth Amendment with impunity, safe in the knowledge that they could wash their hands in the 'procedural safeguards' of the Fifth." (n. 21. Comment 25 Emory L.J. 227, 238 (1976).)

*Dunaway v. New York, supra*, 442 U.S. at 218–219, 99 S.Ct. at 2259–2260.

In *Brown v. Illinois, supra*, Brown was arrested without probable cause for murder. During the trip to the police station the officers asked him if his name was Richard Brown and if he owned a 1966 Oldsmobile. He alternatively evaded these questions or answered them falsely. When he arrived at the police station he was placed in the interrogation room where, before the questioning began, he was read his *Miranda* rights. The police informed him they were aware of a fight he recently had with the victim and that the fatal bullet had come from the same gun Brown had discharged during that incident. He then agreed to talk about the homicide and gave a two page signed confession. Shortly thereafter (within two hours of the arrest), Brown accompanied the officers to look for a man he had implicated in his statement. Within three hours both men were in custody at the police station. Within another three hours Brown gave a second statement which was almost identical to the first, however he refused to sign it. At 9:30 a. m. that morning, approximately nineteen hours after his arrest, Brown was taken before a magistrate. The

778

court held *Miranda* warnings alone were not sufficient to prove the statements were made voluntarily and after considering factors of time, intervening circumstances and the purpose and flagrancy of the official misconduct readily concluded the State failed to meet its burden of showing admissibility. It noted less than two hours had elapsed between arrest and the first confession and "there was no intervening event of significance whatsoever." *Brown v. Illinois, supra,* 422 U.S. at 604, 95 S.Ct. at 2262. In addition the arrest was made without probable cause and, admittedly, "in the hope that something might turn up." *Id.* at 605, 95 S.Ct. at 2262.

In *Morris v. State, supra,* Morris was picked up for questioning about a murder, the police at that time not knowing whether he was a witness or a suspect. Within three · hours Morris had signed a rights waiver, made inculpatory statements and led the police to incriminating physical evidence. The next day he modified his statement placing more blame on an alleged accomplice. Our Supreme Court following *Brown v. Illinois, supra,* held the statements and the physical evidence should have been suppressed as products of the unlawful arrest.

In this case, defendant J. W. Morris turned over evidence and gave an inculpatory statement, all within three hours of his arrest on November 26, 1978. The arrest was made with neither a warrant nor probable cause. There were no intervening circumstances of significance between the arrest and production of evidence and statement. There was no "quality of openness" about defendant's detention and defendant had no contact with the outside world as in *Fortson v. State* (1979) Ind., 385 N.E.2d 429. We are cognizant

> "that a distinction should be made between flagrant violations by the police, on the one hand, and technical, trivial, or inadvertent violations, on the other." *Brewer v. Williams* (1977) 430· U.S. 387, 414 n., 97 S.Ct. 1232, 1247 n., 51 L.Ed.2d 424, 446 n. (Justice Marshall concurring.)

But the violations by the police in this case are not technical or trivial, but rather, as in *Brown,* the violations had a "quality of purposefulness." Concerning the purpose of the interrogation of defendant when he voluntarily accompanied police, Deputy Chief Hahn testified, "Yes, we were pursuing an investigation, that's what we were all there for." Sergeant McClellan indicated that investigation was the purpose of defendant's arrest on November 26.

*Morris v. State, supra,* at 743.

In the case of *Hughes v. State,* (1979) Ind.App., 385 N.E.2d 461, Hughes was arrested in the afternoon of July 13th on a void bench warrant for driving without a license. During the morning of July 14th, without benefit of counsel, he was placed under a bond of $10,000 based on the prosecutor's desire to question him about a July 12th rape. Two days after his arrest and while still in custody he confessed to the police and to his girlfriend. This Court, citing *Brown v. Illinois, supra,* held evidence of both confessions was improperly admitted, stating at 464 of 385 N.E.2d:

> In the case at bar, we believe the conclusion is inescapable that the State failed to sustain its burden on the motion to suppress, and that there is a lack of substantial evidence of probative value to support a finding that Hughes's statements are voluntarily made. Here, the illegal arrest coalesced with an unlawful detention, and the $10,000 bond was used as a subterfuge to "buy time" for further investigation. Moreover, the interrogating officer (Basham) was well aware of the deleterious affects that incarceration had upon Hughes, yet proceeded to accept a "voluntary confession." Under such circumstances, we hold that the inculpatory statements, written and oral, were involuntary and require reversal.

The facts before us are very similar to those in both *Morris v. State, supra,* and *Brown v. Illinois, supra.* Clark's arrest was unlawful. His initial confession and agreement to accompany the police officers to

the scene of the crime were given within a few hours after his arrest. In effect, the only pertinent evidence in favor of the State relating to the initial interrogation was the fact that Clark was given his *Miranda* rights. Under the circumstances of this case, this was not sufficient. Nor, with respect to evidence of statements and actions by Clark the following day, can we find any intervening circumstances which caused "a break in the chain of events sufficient to insulate" the statement and actions of Clark at the crime scene "from that which went before". *Hendricks v. State, supra* at 1314. After his initial confession, Clark had no contact with the police or the outside world until he accompanied the police to the scene on the following day. During that period he remained in jail and spoke only with the jail personnel and the other two men arrested for the burglary. Thus, because of the failure of the State to carry its burden of presenting significant evidence to counter Clark's Fourth Amendment claim, we are compelled to find the trial court erred in admitting the questioned testimony.

The record herein discloses the only other evidence involving Clark with the crime was testimony he had been drinking with Larry Swearengin during the entire day of November 10, 1975. We conclude the judgment must have been substantially swayed by the inadmissible evidence and its admission was not harmless error beyond a reasonable doubt. *Chapman v. California,* (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *Robinson v. State,* (1973) 260 Ind. 517, 297 N.E.2d 409.

Since this opinion requires reversal of the trial court because of trial error and not evidentiary insufficiency we reverse and remand Clark's conviction for a new trial. *Mulry v. State,* (1980) Ind.App., 399 N.E.2d 413, 419.

YOUNG and CHIPMAN, JJ., concur.