**James Earl CANNON, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 3–780A196.**

Court of Appeals of Indiana, Third District.

Dec. 29, 1980.

Donald C. Swanson, Jr., Fort Wayne, for appellant (defendant below).

Theo. L. Sendak, Atty. Gen., Frederick N. Kopec, Deputy Atty. Gen., Indianapolis, for appellee (plaintiff below).

STATON, Judge.

James Earl Cannon was convicted in a trial to the court of two counts of Possession of a Narcotic Drug.[1]

On appeal, Cannon raises three issues:

(1) Was the evidence used against him obtained by an improper execution of a misdemeanor bench warrant in violation of IC 1971, 35–1–19–6;[2]

(2) Was an additional arrest warrant required to arrest him for Possession of a Narcotic Drug;

(3) Was the evidence sufficient to prove his possession of the narcotic drugs.

We affirm.

## I.

### Execution of Warrant

On May 1, 1979, a bench warrant was issued for the arrest of Cannon for Resisting Law Enforcement.[3] The next day, police officers went to arrest Cannon at his last known address. After determining that Cannon was not one of the several people that had entered or left the house while they were watching it, two of the police officers eventually looked in a side window of the house.[4] They recognized Cannon sitting at the dining room table.

---

1. The Statute read:

   "[IC 1971] 35–48–4–6. Possession of a narcotic drug.—A person who, without a valid prescription or order of a practitioner acting in the course of his professional practice, knowingly or intentionally possesses a narcotic drug classified in schedule I or II commits possession of a narcotic drug, a class D felony. However, the offense is a class C felony if the amount of the drug involved has an aggregate weight of ten [10] grams or more."

2. "[IC 1971] 35–1–19–6 [9–1009]. Arrest—May break doors.—To make an arrest in criminal actions the officer may break open any outer or inner door or window of a dwelling house or any other building or inclosure to execute the warrant, if, after notice of his authority and purpose, he be refused admittance."

3. Cannon had failed to appear for trial on a different criminal matter.

4. One officer testified it was his standard practice to look in a window if the bench warrant is for resisting law enforcement or fleeing. Another officer testified that he looked in the window as a special precaution to determine if a large number of weapons were present. Earlier that spring, he had assisted in the arrest of a suspect at Cannon's previous address. Five firearms were confiscated. Cannon had been present.

Cannon contends that the narcotic drugs found in plain view on the dining room table must be suppressed as being tainted by an illegal search. He argues that the police officers violated IC 35–1–19–6 [5] when they forcefully entered the front and rear of the house.

■ The State and Cannon agree the officers did not announce their purpose. He invites us to find that the officers did not announce their authority. He is really questioning the sufficiency of the evidence. When examining the sufficiency of the evidence, we must consider that evidence which is most favorable to the State, together with all the logical and reasonable inferences to be drawn therefrom. *Willard v. State* (1980), Ind., 400 N.E.2d 151. We must resolve the conflict in evidence in favor of the State; the police did announce their authority.

The police are not always required to give notice of their purpose if exigent circumstances exist. *State v. Dusch* (1972), 259 Ind. 507, 289 N.E.2d 515. We look to the facts of each particular case and focus upon the particular situation the arresting officers encountered to determine if exigent circumstances exist. *Id.* It has long been held that exigent circumstances exist if "those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door), are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted." *Ker v. California* (1963), 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; *Johnson v. State* (1973), 157 Ind.App. 105, 299 N.E.2d 194.

■ As the officers approached the door, someone across the street began to honk their car horn and yell at the house. As soon as the officers knocked and announced "police", everyone began to scatter and run throughout the house. Those exigent circumstances relieved the officers from having to announce their authority. They validly entered the house to execute the bench warrant for Cannon's arrest.

■ Once inside the house, the officers could see the narcotic drugs on the dining room table. As the officers were justified in being in the dining room to arrest Cannon, the narcotic drugs in plain view were subject to seizure and admissible into evidence. *May v. State* (1977), Ind.App., 364 N.E.2d 172.

### II.

### Additional Warrant

■ Cannon cites the recent United States Supreme Court decision of *Payton v. New York* and *Riddick v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639, for the proposition that the Fourth Amendment of the United States Constitution prohibits the police from making a warrantless and non-consensual entry into a suspect's home in order to make a routine felony arrest. He argues his arrest was unlawful as the police did not have a warrant for his arrest for possession of a narcotic drug and that the subsequent seizure of the narcotic drugs in plain view was illegal as the officers were not in a place where they had a right to be.

Cannon's argument fails because *Payton, supra,* involved situations when the police did not have *any* warrant when they entered the suspect's house to make an arrest. The police entered Cannon's last known address on the authority of the bench warrant for his arrest.[6] *Payton, supra,* specifically

---

**5.** "[IC 1971] 35 ·1–19–6 [9–1009]. Arrest— May break doors.—To make an arrest in criminal actions the officer may break open any outer or inner door or window of a dwelling house or any other building or inclosure to execute the warrant, if, after notice of his authority and purpose, he be refused admittance."

**6.** Cannon boldly asserts that the police had abandoned their purpose to arrest him on the authority of the bench warrant. His mere naked assertion, unsupported by citations to the record as required by Ind. Rules of Procedure, Appellate Rule 8.3(A)(7), falls below the standard required of arguments before this Court. Our own independent search of the record, which we have elected to do this time, does not reveal an abandonment by the police of their purpose to arrest Cannon for Resisting Law Enforcement.

stated that an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.[7] Cannon's fourth amendment rights would not have been further protected by requiring the police officers to obtain a second warrant for Cannon's arrest.

### III.

### Sufficiency of Evidence

■ Cannon argues that there was insufficient evidence to prove that he was in possession of the narcotic drugs found on the table at which he had been sitting. We disagree.

Non-exclusive, constructive possession of the narcotic drug satisfies the "possession" element. *See Martin v. State* (1978), Ind. App., 372 N.E.2d 1194. Constructive possession has been defined as an intent and capability to maintain control over the substance. *Thomas v. State* (1973), 260 Ind. 1, 291 N.E.2d 557; *Martin, supra.* Intent can be inferred from evidence of the accused's knowledge of the substance's illegal character and its presence. *Watt v. State* (1980), Ind.App., 412 N.E.2d 90 (1980).

Taking the evidence in the light most favorable to the State, *Willard, supra*, Cannon was found alone, seated at the dining room table with narcotic drugs spread on the table top in plain view. He indicated that he knew the illegal nature of the drugs. After Cannon had been handcuffed and placed in a chair a few feet from the table, he jumped up and lunged toward the table in an attempt to blow some of the powdered drugs off of the table.

Affirmed.

GARRARD, P. J., and HOFFMAN, J., concur.

---

7. An officer testified that the police had received information that Cannon lived at this address.