Lonnal R. **DAVENPORT,** Appellant
(Defendant below),

v.

**STATE** of Indiana, Appellee
(Plaintiff below).

No. 383S100.

Supreme Court of Indiana.

July 6, 1984.

Rehearing Denied Aug. 24, 1984.

**1304**

Aaron E. Haith, Choate Visher & Haith, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Lonnal Davenport, was convicted by a jury of attempted murder, a Class A felony, Ind.Code §§ 35–41–5–1, 35–42–1–1(1) (Burns 1979 Repl.) and possession of a controlled substance, a Class C felony, Ind.Code § 35–48–4–6 (Burns 1984 Supp.). He was sentenced to the Indiana Department of Correction for concurrent terms of fifty and five years. In this direct appeal, he raises the following four issues:

1. Whether the trial court erred in denying defendant's motion to suppress certain evidence where the police officers allegedly did not announce their authority before breaking into his house;

2. Whether the trial court erred in failing to order disclosure of the identity of the police informant;

3. Whether there was sufficient evidence to support the convictions; and

4. Whether the trial court erred in refusing to grant a mistrial after certain prejudicial questions of the prosecutor.

A brief summary of the facts from the record most favorable to the state shows that Indiana state police officers obtained a search warrant for defendant's residence on January 19, 1982, for the purpose of finding controlled substances in the residence. They attempted to serve the warrant that afternoon but no one was at home at the residence. Later that evening, Offi-

cer Steven Banks returned to the residence with several other officers in order to execute the search warrant. Banks testified that all of the officers were wearing civilian clothes and were driving a civilian automobile. He testified that he and two officers went to the front door and two other officers went to the side door. He stated that he knocked on the front door and that defendant came to the door and looked out the window but did not open the door.

Banks asked if he could speak to "Michele." Defendant at first said Michele wasn't there and then said yes and started to turn away. Banks asked defendant to wait and put his police I.D. up to the window of the door. Defendant looked at the I.D. a few seconds and then ran from the door. Banks then yelled "Police" and attempted to kick in the door. He acknowledged that he did not ever state that he had a search warrant. The officers guarding the side door then yelled "Police" and were successful in breaking into the house through that door.

Deputy McPherson was the first to enter and yelled "Police" again when he observed defendant running through the hall. Defendant did not stop but ran to the bedroom and returned with a gun. McPherson testified he heard defendant say "It's the pigs." When defendant returned to the hallway, he shot McPherson and another officer and was also wounded himself. McPherson suffered serious life-threatening injuries from defendant's shot at him. Banks subsequently executed the search warrant and found pills and syringes in a dresser drawer in the bedroom. The pills were found to contain hydromorphone, a Schedule II controlled substance.

## I.

Defendant first contends that the trial court erred in denying his motion to suppress the evidence the police seized from his home. He argues that since the police officers did not announce their authority before entering his house, the search was improper and the evidence obtained should have been suppressed.

It is well settled that Indiana recognizes the "knock and announce" rule for the execution of arrest and search warrants. The rule requires that police knock and announce their authority and purpose before forcing entry into a home. *Miller v. United States,* (1958) 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332; *State v. Dusch,* (1972) 259 Ind. 507, 289 N.E.2d 515. It is also well settled that this knock and announce requirement is not to be adhered to blindly regardless of the particular circumstances confronting the authorities at the time the search is to be conducted. *State v. Dusch,* 259 Ind. at 512, 289 N.E.2d at 517. Whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case. *Highsaw v. State,* (1978) 269 Ind. 458, 381 N.E.2d 470, *cert. denied,* 442 U.S. 941, 99 S.Ct. 2884, 61 L.Ed.2d 311 (1979).

The defendant and the state agree that the officers here did not announce their purpose. However, as the state points out, the police are not always required to give notice of their purpose if exigent circumstances exist. The United States Supreme Court has held that exigent circumstances exist if "those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door), are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted." *Ker v. California,* (1963) 374 U.S. 23, 47, 83 S.Ct. 1623, 1636, 10 L.Ed.2d 726, 746. *See also Cannon v. State,* (1980) Ind.App., 414 N.E.2d 578.

In this case, at the hearing on the motion to suppress, the state presented testimony to show that the police officers had knocked on the door and that Officer Banks had shown his I.D. to defendant. Banks testified that defendant then ran toward the back of the house, and his testimony was corroborated by the other officers. Defendant's action at that time did present exigent circumstances, for the police could reasonably fear that he was at-

tempting to escape or to destroy the illicit drugs. The particular exigent circumstances of this case relieved the police officers from having to announce their authority. They validly entered the house to execute their search warrant for drugs.

## II.

Defendant next contends the trial court erred in denying his motion for disclosure of the identity of the confidential informant. Defendant raises this issue as fundamental error although he did not assert it in his motion to correct errors. He feels that the informant's identity was crucial to an attack on the search warrant as the state relied upon her credibility. He further argues that he believes that an individual named Michele Moppin was the police informant and that he was not on good terms with Michele. He testified that Michele brought ten pills to his house and asked him to hold them for her on the day before the police executed the search warrant. Defendant feels that Michele "set him up" in order to get favorable treatment on a similar charge against herself.

■ It is well settled that the general policy in Indiana is to prevent disclosure of an informant's identity unless the defense can demonstrate that disclosure is relevant and helpful to the defense or is necessary to a fair trial. *Powers v. State*, (1982) Ind., 440 N.E.2d 1096; *Ryan v. State*, (1982) Ind., 431 N.E.2d 115. Since the state has the privilege to withhold the identity of an informer, the burden is upon the defendant seeking disclosure to demonstrate exception to the privilege that the informer remain anonymous. *Lewandowski v. State*, (1979) 271 Ind. 4, 389 N.E.2d 706. In this case, while the informant may have been the person who brought pills to defendant's house, this act is not relevant since defendant was charged with possession and not delivery of the illegal drugs.

■ However, the informant also participated in a controlled buy which formed part of the basis for the search warrant. Defendant alleges that Michele was not searched carefully prior to being sent into his house to make the controlled buy. He contends that she brought ten pills into the house in her panties, ingested one pill, took one pill back outside as the alleged buy, and left the other pills with defendant. Although Michele did play a major part in the controlled buy, we are not persuaded that an order of the disclosure of the name of the informant would have been essential to a fair determination of this case. Since defendant strongly suspected Michele was the informant, he could have issued a subpoena for her as a defense witness at the suppression hearing or the trial. At the very least, he could have deposed her and any arguable infirmities in the probable cause determination underlying the search warrant could have been presented to the trial court.

In this case, the informant's testimony would have been irrelevant to the issue of guilt or innocence on the charge of possession and defendant failed to pursue available discovery procedures. His argument that the name of the informant was essential to the marshaling of a defense is not persuasive and falls short of meeting the burden of demonstrating that disclosure should have been required. There was no error here.

## III.

Defendant next contends that there was insufficient evidence to sustain the verdicts. He first argues that there was not sufficient evidence that he was in sole possession and control of the area where the illegal drugs were found to support the conviction for possession. It is true that evidence was presented to show that defendant's girlfriend and her young son were present in the house at the time of the police search.

■ Our standard for reviewing sufficiency claims is firmly established; on appeal the reviewing court does not weigh the evidence or judge credibility. We are constrained to consider only that evidence most favorable to the state, together with all reasonable and logical inferences to be

drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *McNary v. State,* (1984) Ind., 460 N.E.2d 145; *Tunstall v. State,* (1983) Ind., 451 N.E.2d 1077; *Fielden v. State,* (1982) Ind., 437 N.E.2d 986.

■ It is also well settled that the state does not need to prove actual physical possession to establish an accused's possession of illegal drugs but needs only prove constructive possession. We have held that constructive possession is the intent and capability to maintain control and dominion over the illegal drugs. *Thomas v. State,* (1973) 260 Ind. 1, 4, 291 N.E.2d 557, 558; *Parson v. State,* (1982) Ind.App. 431 N.E.2d 870; *Watt v. State,* (1980) Ind.App., 412 N.E.2d 90. Proof of a possessory interest in the premises in which the illegal drugs are found is adequate to show the capability to maintain control and dominion over the items in question. *Hutcherson v. State,* (1978) 178 Ind.App. 8, 381 N.E.2d 877. When, however, possession of the premises is not exclusive, the inference of intent must be supported by additional circumstances pointing to an accused's knowledge of the nature of the controlled substances and their presence. *Mills v. State,* (1978) 177 Ind.App. 432, 379 N.E.2d 1023.

■ In the instant case, defendant had resided in the house where the drugs were found for several months. The drugs were found in a dresser drawer in the only bedroom in the residence along with a man's watch and several syringes. Additionally, in the dining room of the residence, police found a note addressed to "Lonnie" that referred to someone named "Dennis" having some "Ds." The pills recovered from defendant's bedroom were Dilaudid, a brand name for pills containing hydromorphone. Finally, the police officers testified that defendant ran away from the front door when he saw the police I.D. card. All of this evidence was sufficient to show that defendant did know of the presence and nature of the drugs in his bedroom.

Defendant next argues that there was not sufficient evidence to sustain his conviction for attempted murder because the jury verdict included a request for leniency which negated the finding of the necessary element of intent. The jury returned the verdict of guilty of the crime of attempted murder, as charged in count one of the information. However, the jury appended its own handwritten statement, saying "with the recommendation of leniency due to the unpremeditated nature of the act."

■ It is well settled that words added to a verdict are considered surplusage unless inconsistent with the jury's determination. *Hogan v. State,* (1980) Ind., 409 N.E.2d 588; *Rush v. State,* (1973) 260 Ind. 87, 292 N.E.2d 599. It is also clear that premeditation is no longer an element of the crime of murder. Ind.Code § 35–42–1–1 (Burns 1979 Repl.). In the present statute, the necessary culpability is that the act be done knowingly or intentionally. We have held that an act is done knowingly if it is willed, is the product of a conscious design, intent or plan that it be done, and is done with an awareness of the probable consequences. *Horne v. State,* (1983) Ind., 445 N.E.2d 976; *Hulen v. State,* (1980) Ind., 413 N.E.2d 907. Furthermore, intent to kill can be inferred from the intentional use of a deadly weapon in a manner reasonably calculated to produce death or great bodily harm so that a purpose to kill may be inferred from the act of killing. *Vasseur v. State,* (1982) Ind., 430 N.E.2d 1157; *Jackson v. State,* (1981) Ind., 426 N.E.2d 685.

■ The jury's statement that defendant did not act with premeditation is not inconsistent with the guilty verdict of attempted murder as there can be an intentional and knowing act without premeditation which supports the culpability necessary to prove attempted murder. The jury was properly instructed on the elements of the crime of murder and the definitions of the words "knowingly" and "intentionally." There is nothing in the handwritten statement of the jury which would impeach its verdict or indicate any misunderstanding of the law on the part of the jury. Here,

there was sufficient evidence that defendant intentionally shot the officers after they had yelled "Police" several times and that he deliberately ignored a warning to halt. His acts of firing a loaded weapon at two different officers were substantial and conclusive steps toward the crime of murder. There was sufficient evidence to support the verdict of guilty of attempted murder.

### IV.

Defendant finally argues that the trial court erred in denying his motion for mistrial based upon the prosecutor's improper questions during the rebuttal testimony of Officer Banks. The officer was questioned about the presence of defendant's girlfriend, Mechele Hopkins, in the residence at the time the search warrant was executed. He identified the person depicted in two photographs as being Mechele. The prosecutor then asked "And in particular, is there any area that is being displayed in the photograph?" Defendant's objection at that point was overruled and the following answer and further question were given:

A. "State's Exhibit 68 is a photograph of Mechele Hopkins with her, both of her arms exposed."

Q. "And did you have an opportunity that evening to examine those arms?"

Defense counsel again objected and there was an unrecorded conference at the bench. The trial court then admonished the jury to disregard the question of the prosecutor and "any answer by the police officer regarding Mechele Hopkins and any part of her physical anatomy." Defendant made a belated motion for mistrial after both sides had rested their cases. He now claims that the prosecutor was trying to prejudice the jury by creating the inference that Mechele Hopkins's arms evidenced drug addiction and that this amounted to an evidentiary harpoon.

It is true, as defendant points out, that we have held that when it is apparent that the "sole purpose of calling the witness was to wield the *evidential harpoon*, deliberately calculated by counsel to prejudice the jury against the defendant and his defense," an admonishment cannot cure the error and a mistrial should be declared. *White v. State*, (1971) 257 Ind. 64, 76, 272 N.E.2d 312, 319 (emphasis in original). However, we have found that in cases involving simple irregularities such as counsel asking leading questions or questions calling for hearsay answers, there is a strong presumption that the jury was able to follow the admonitions of the trial court to disregard any hastily given evidence. *Davis v. State*, (1981) Ind., 418 N.E.2d 203; *Hightower v. State*, (1973) 260 Ind. 481, 296 N.E.2d 654. The police officer's testimony here about the scene of the crime and the persons present at that time was relevant. While the condition of Mechele's arms was irrelevant to the issues, the prosecutor's questions at that point were examples of the irregularities which are presumed to be cured by a proper admonishment.

The granting of a mistrial lies largely within the sound discretion of the trial court and is only proper where, under all the circumstances, the defendant has been placed in a position of grave peril to which he should not have been subjected. *Morgan v. State*, (1981) Ind., 419 N.E.2d 964; *Tinnin v. State*, (1981) Ind., 416 N.E.2d 116. If a jury is admonished by the trial court to disregard what has occurred at trial, or if other reasonable curative measures are taken, reversible error will not normally be found. *Smith v. State*, (1978) 270 Ind. 1, 382 N.E.2d 937; *Ballard v. State*, (1974) 262 Ind. 482, 318 N.E.2d 798. Here there was no answer to the prosecutor's improper question about Mechele's arms and no prejudicial information was actually given to the jury. There was no abuse of discretion in the trial court's denial of the belated motion for mistrial.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER and PI-VARNIK, JJ., concur.

PRENTICE, J., concurs in result with opinion.

PRENTICE, Justice, concurring in result.

I concur in the affirmance of the judgment.

With regard to the sufficiency of the evidence upon the conviction for attempted murder, I am of the opinion that the majority's statement that premeditation is no longer an element of the crime of murder is misplaced but unnecessary to the result. Although murder does not now necessarily encompass intent or premeditation, the crime of "Attempt" does. *Smith a/k/a Watford v. State*, (1984) Ind., 459 N.E.2d 355.

Notwithstanding the Jury's gratuitous recommendation for leniency, a finding of the necessary element of intent was not negated. The words were mere surplusage and should be treated accordingly. Additionally, the use of the term "unpremeditated nature of the act" in the statement of the Jury obviously meant that the act of shooting was done in haste—without cool reflection—and not as a word of art to denote the element of a crime. To say that one attempted an act but did not intend to do so or did not premeditate it is a contradiction of terms.