**Norma CRABTREE, Darrell Crabtree, and Samuel Clinton Crabtree, Appellants (Defendants),**

v.

**STATE of Indiana, Appellee (Plaintiff).**

**No. 2–1083A377.**

Court of Appeals of Indiana, Second District.

June 11, 1985.

Stephen W. Dillon, Indianapolis, for appellants.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendants-appellants S. Clinton Crabtree (Clinton) and Norma J. Crabtree (Norma) appeal their court convictions of two counts each of possession of a controlled substance, a class D felony,[1] and defendant-appellant Darrell Crabtree (Darrell) contests his court conviction of possession of paraphernalia, a class D felony,[2] alleging the trial court erred by denying a motion to dismiss and by denying a motion to suppress evidence [hereinafter the defendants are collectively referred to as the Crabtrees]. In addition, Darrell challenges the sufficiency of the evidence to sustain his conviction.

We affirm.

## FACTS

On May 4, 1982, Indianapolis Police Department Detectives Barbara Gilberti-Schneider (Gilberti-Schneider) and Daniel Harvey (Harvey) along with other members of the Indianapolis Police Department and the Marion County Prosecutor's Office executed a search warrant for room 111 of a motel located in Indianapolis. The four occupants of this room were Clinton, Norma, Darrell, and Margaret Crabtree (Margaret), Darrell's wife. The evidence re-

1. Ind.Code 35–48–4–7 (1982) (current version at IC 35–48–4–7 (Supp.1984)).

2. IC 35–48–4–8.3.

veals that one officer knocked and announced that the police were present as another officer used a passkey to open the door to the room. Upon entry, Clinton and Norma were found in the living room area of the motel suite, which was one room divided into a living area, bathroom, and bedroom. The officers observed Darrell attempt to close a sliding door between the living area and the bedroom; however, the officers rushed the door and were able to obtain entry. Darrell then attempted to escape via a window, and Margaret, a juvenile, tossed some objects under the bed upon which she was lying.

A search of the motel suite revealed a bottle of desoxyn in a sink near the bathroom, and a quantity of the same drug was found in Clinton's pant's pocket. The police also discovered a cigarette lighter encrusted with the residue of preludin along with a warm "cooker", a device used to liquify drugs prior to injection, under the bed. A hypodermic syringe was stuck into a pillow on the bed.

On September 9, 1982, the Crabtrees filed a motion for disclosure of exculpatory evidence and a motion to suppress evidence. At a hearing on October 7, 1982, Clinton and Norma testified the officers did not knock and announce their presence before entering the room. Gilberti-Schneider and Harvey testified that the police did in fact knock and announce simultaneously with the use of the passkey to enter the motel room. Moreover, the officers testified they had previously executed a search warrant on the same premises on April 21, 1982. Before executing that warrant, the officers had obtained a passkey from the motel office and walked past the room in an attempt to look in the window and determine who was present. As they did so, Norma observed them and rapidly retreated from the window towards the back of the room. Fearing destruction of contraband, the officers utilized the passkey to enter the suite. Upon entering, they found Norma heading towards the toilet and a quantity of drugs nearby.

The court overruled the Crabtrees' motion to suppress the evidence from the May 4, 1982 search, but did grant their motion for production of exculpatory evidence.

On January 6, 1983, the Crabtrees filed a motion to dismiss, based on the asserted failure of the State to comply with their discovery request. This motion was later overruled.

The cause proceeded to trial before the court on June 17, 1983. In addition to testimony which mirrored that of the October, 1982 suppression hearing, Margaret took the stand and testified that she, as a juvenile, had pled guilty to possession of the paraphernalia. She asserted that she was preparing to inject a drug into her body when the police entered the room, that Darrell was asleep on the bed, and that Darrell had no knowledge of her activities. Although the Crabtrees were found not guilty of conspiracy charges, Clinton and Norma were found guilty of two counts each of possession of a controlled substance, and Darrell was adjudged guilty of possession of paraphernalia.

The Crabtrees' motion to correct error was denied on September 20, 1983, and this appeal ensued.

## ISSUES

The Crabtrees posit three issues for our consideration:

1. Did the trial court err by denying the motion to dismiss?

2. Did the trial court err by denying the motion to suppress?

3. Whether the evidence is sufficient to sustain Darrell's conviction?

## DECISION

ISSUE ONE—Did the trial court err by denying the motion to dismiss?

PARTIES' CONTENTIONS—The Crabtrees maintain the State failed to respond to their discovery request and advise them of exculpatory evidence in the form of a legitimate prescription for some of the drugs which were the basis for the illegal possession charges. This failure to provide

exculpatory evidence, they claim, constitutes denial of a fair trial.

The State responds that the Crabtrees have failed to show any noncompliance and that the allegations of exculpatory evidence are unsworn statements by defense counsel which, even if true, do not represent noncompliance on the part of the State.

CONCLUSION—The trial court did not err by denying the motion to dismiss because the Crabtrees have shown neither an abuse by the State nor prejudice resulting from the State's action.

The Indiana Supreme Court has addressed the parameters of our inquiry into this matter:

> "Questions of discovery are to be determined by the trial court in its discretion and, *absent a showing of clear error and resulting prejudice to the defendant,* its ruling will not be overturned on appeal. When the State fails to disclose all pertinent information prior to trial, a defendant may either move for a continuance or for exclusion of the evidence. While a continuance is usually the proper remedy for failure to disclose, an exclusion may be warranted when the State has made a flagrant and deliberate refusal to comply with discovery."

*Wagner v. State* (1985), Ind., 474 N.E.2d 476, 485 (emphasis supplied); *see also Pedigo v. State* (1982), Ind.App., 443 N.E.2d 347; *Long v. State* (1982), Ind.App., 431 N.E.2d 875.

■ Here, the Crabtrees say the State did not reveal the existence of legal prescriptions for a seized drug in the discovery material turned over to the Crabtrees on October 14, 1982, pursuant to court order. Although included in Crabtrees' brief, this material is not in the record before this court for review. In any event, Crabtrees' counsel asserts he discovered these items when he went to the Indianapolis Police Department headquarters in December, 1982 to review the discovery materials in the custody of Gilberti-Schneider. Assuming arguendo that the State did not advise the Crabtrees of this material until December, we fail to see any prejudice to their

case. The Crabtrees assert they discovered the purportedly exculpatory material in December, 1982. The trial was held June 17, 1983, and the Crabtrees have not shown how any prejudice accrued to their cause as they knew of this mitigating material six months prior to their trial. Furthermore, the Crabtrees' counsel vigorously interrogated Gilberti-Schneider about the prescriptions at trial. In so deciding, we remind the State of its unquestioned duty to determine the existence of discovery materials and to expeditiously make the same available to defendants. See Judge Shields's concurring opinion in *Jacobs v. State* (1982), Ind.App., 436 N.E.2d 1176, 1178.

ISSUE TWO—Did the trial court err by denying the motion to suppress?

PARTIES' CONTENTIONS—The Crabtrees complain that the police failed to follow the "knock and announce" rule in serving the search warrant on May 4, 1982. They say the record is devoid of any evidence establishing exigent circumstances which would excuse the failure of the police to comply with the knock and announce rule, so the motion to suppress the evidence should have been granted.

The State counters the police did in fact knock and announce as required and, in any event, the record does support a finding of exigent circumstances to excuse any purported violation of the knock and announce principle.

CONCLUSION—Exigent circumstances existed which excused any failure to comply with the knock and announce rule; thus, the denial of the motion to suppress was proper.

■ The courts of Indiana apply the knock and announce rule to the execution of arrest and search warrants. *State v. Dusch* (1972), 259 Ind. 507, 289 N.E.2d 515. "The rule requires that police knock and announce their authority and purpose before forcing entry into a home." *Davenport v. State* (1984), Ind., 464 N.E.2d 1302, 1305. The policy behind this rule is clear. The knocking requirement alerts the inhabitants to the presence of persons

seeking entrance. The announcement of authority requirement identifies those seeking entrance as officers of the law. The announcement of purpose requirement is a recognition of the right of the dwelling's inhabitants to protection against unreasonable search and seizure and to enjoyment of the privacy of their abode. However, adherence to this rule is not without limitation. As Justice Hunter explained in *Davenport*:

> "[T]his knock and announce requirement is not to be adhered to blindly regardless of the particular circumstances confronting the authorities at the time the search is to be conducted. Whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case."

*Id.* (Citations omitted) (emphasis supplied). The court further explained that "the police are not always required to give notice of their purpose if exigent circumstances exist." *Id.* Here, the evidence most favorable to the State reveals that the police knocked and identified themselves, but failed to state the purpose of their presence when effecting the May 4, 1982 search. The Crabtrees were thus apprised of persons seeking entrance and the identity of those persons, but not the reason for the intrusion into their dwelling. The precise question is whether exigent circumstances existed to justify this failure.

▆▆▆ As the Crabtrees contend, the mere fact that drugs are the object of a search does not create an exception to the knock and announce rule. *Dusch, supra.* Here, the unquestioned object of the search was drugs, but there is more. The minions of the law and the Crabtrees were not strangers to one another. The Crabtrees knew the identities of the officers. During an earlier search on April 21, 1982, Norma looked out of the motel window, recognized the same officers, and was intercepted by the police as she retreated toward the bathroom at the back of the suite, presumably to destroy the drugs stored there. This prior conduct on Crabtrees' part, as well as the physical layout of their motel dwelling, which was a small, connected suite with a window commanding a bird's-eye view of the only entrance, constitutes sufficient exigent circumstances to excuse a reasonable variance from the strict requirements of the knock and announce rule.

In the Indiana cases in which the failure to abide by the knock and announce rule was fatal to the State's cause, the *sole* assertion of exigent circumstances was the existence of drugs as the probable bounty of the search. *See Ludlow v. State* (1974), 262 Ind. 266, 314 N.E.2d 750; *Dusch, supra.* The Indiana cases upholding police actions despite violations of the knock and announce rule involve not only a quest for illegal drugs, but some other indicator of defendant's intent to evade the lawful execution of a warrant as well. *See Davenport, supra* (defendant fled into house upon identifying police); *Cannon v. State* (1980), Ind.App., 414 N.E.2d 578 (yelling and car horn honking as police approached house and sounds of running inside); *Johnson v. State* (1973), 157 Ind.App. 105, 299 N.E.2d 194 (footsteps running away from door).

The United States Supreme Court in *Ker v. California* (1963), 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 upheld a search when the officers utilized a key to unlock a door and quietly enter a dwelling so as to take the occupants by surprise. The Court applied a California statute similar to the law of Indiana and found exigent circumstances based upon a reasonable belief that the defendant was in possession of narcotics which could be quickly and easily destroyed and *defendant's earlier furtive conduct* evading police which indicated he might be expecting the arrival of law enforcement authorities. Thus, the case law does support the actions of the police in the cause before us.

The trial court was correct in its denial of Crabtrees' motion to suppress. By so concluding, we do no violence to William Pitt's famous observation that the sovereign cannot enter even the most humble tenement without the inhabitant's permis-

sion. There is no constitutional right to violate the law and evade legal process by claiming sanctuary in one's castle.

ISSUE THREE—Is the evidence sufficient to sustain Darrell's conviction?

PARTIES' CONTENTIONS—Darrell maintains that, at most, the evidence establishes his mere presence in the vicinity of the paraphernalia and does not suffice to establish the intent required to find constructive possession of the paraphernalia.

The State replies that the evidence is sufficient to establish constructive possession.

CONCLUSION—The evidence is sufficient to establish constructive possession of the paraphernalia.

■ The requisites for the determination of sufficiency of the evidence are well known. *See Thomas v. State* (1973), 260 Ind. 1, 291 N.E.2d 557; *Snyder v. State* (1984), Ind.App., 460 N.E.2d 522, *trans. denied*. As the parties recognize, possession may be either actual or constructive, and, in this instance, our inquiry is limited to whether the evidence shows constructive possession of the paraphernalia. Constructive possession has been defined by our supreme court as "an intent and capability to maintain control and dominion over" the illicit items. *Thomas, supra* at 4, 291 N.E.2d at 558.

■ The focus of Darrell's argument is that the evidence was insufficient to show *his intent* to control and exercise dominion over the paraphernalia. "[W]hen a person does not have exclusive possession of the premises, 'mere presence' in the place is not sufficient proof of intent to possess...." *Watt v. State* (1980), Ind.App., 412 N.E.2d 90, 98. Thus, the inference of intent must be bolstered by showing additional circumstances. *Snyder, supra; Watt, supra*. Among the additional circumstances which will support such an inference are proximity to contraband in plain view, attempted flight, defendant's admission of ownership of contraband, and furtive conduct. *See Snyder, supra; Par-*

*son v. State* (1982), Ind.App., 431 N.E.2d 870, 873 (Shields, J. dissenting).

■ Here, evidence of additional circumstances to support the inference is present. According to police testimony, Darrell tried to prevent the police officers from entering the bedroom by holding a sliding door shut. He then tried to escape the motel room via a window. Thus, Darrell engaged both in furtive conduct and attempted flight. Moreover, Darrell was in close personal proximity to contraband which was in plain view. He was in a small room and, according to Margaret, lying on the bed while she prepared to inject drugs into herself. The lighter, the cooker, and the hypodermic syringe were all in plain view when the police entered. These additional circumstances lead to a reasonable inference of intent on Darrell's part to exercise dominion and control over the contraband. Margaret's testimony that the paraphernalia was hers alone is merely conflicting evidence, resolution of which rests solely with the trier of fact. The evidence is sufficient.

The judgments of conviction are affirmed.

SHIELDS, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

The majority's approval of the May 4, 1982 entry, search and seizure compels my dissent.

The defendants correctly contend that all of the evidence seized in the May 4, 1982 entry and search of their motel suite should have been suppressed because the officers executing the search warrant failed to knock and announce their identity and purpose prior to entry. There is evidence that a knock and announcement of police presence was simultaneous with the opening of the door with a passkey.

One of the entering officers testified as follows:

"Q. What position did you take as you were getting ready to serve this warrant?

A. Again, we went to the office and got the key. We could see activity inside but they did not see us, at least I don't think they did. Went to the door and Detective Osborn announced that it was the police, I stuck the key in the door and unlocked it and went in.

Q. You were at the front door?

A. We were at the front door and two guys went to the back.

Q. Did you have any indication that the occupants of that apartment had seen you coming that time?

A. No.

Q. So you got to the front door and you say, 'Open up,' when you got to the front door, is that correct?

A. Correct. We had it pre-arranged that I would unlock the door because I had the key, turn the knob, and Osborn would knock and announce that we were the police and that is what happened. I went to put the key in the lock and knocked and hollered 'police' and went in." Record at 151–152.

"Q. Officer, did you intend to use the passkey whether ... in any case, you intended to use the passkey?

A. Correct.

Q. Had you planned on knocking and announcing and letting the defendants answer the door?

A. No.

Q. It is clear in both cases you weren't really prepared to give them an opportunity to open the door after you announced the authority?

A. Having dealt with them before, they wouldn't open the door. It was not our maiden voyage.

Q. Have you actually personally ever served a search warrant on Norma prior to that?

A. No.

Q. So how do you know that she wouldn't open the door?

A. (inaudible)

Q. So you didn't have any personal knowledge of her opening the door or shutting the door on you in a warrant?

A. No. Not personally.

Q. Osborn did knock and announce simultaneously with the passkey.

A. Perfect coordination.

Q. Perfect coordination?" Record at 155.

Such evidence does not bring this case within State and Federal constitutional requirements for lawful searches and seizures. In *Payton v. New York* (1980) 445 U.S. 573, 594, 100 S.Ct. 1371, 1384, 63 L.Ed.2d 639, the majority of the United States Supreme Court set forth the historical common law underpinning for the "knock and announce" requirement. Quoting from *Semayne's Case*, 5 Co.Rep. 91a, 91b, 77 Eng.Rep. 194, 195–196 (K.B.1603), the Court said:

"'In all cases when the King is party, the Sheriff (if the doors be not open) may break the party's house, either to arrest him, or to do other execution of the K.'s process, if otherwise he cannot enter. But before he breaks it, he ought to signify the cause of his coming, and to make request to open doors; and that appears well by the stat. of Westm. 1. c. 17. (which it but an affirmance of the common law) as hereafter appears, for the law without a default in the owner abhors the destruction or breaking of any house (which is for the habitation and safety of man) by which great damage and inconvenience might ensue to the party, when no default is in him; for perhaps he did not know of the process, of which, if he had notice, it is to be presumed that he would obey it, and that appears by the book in 18 E. 2. Execut. 252. where it is said, that the K.'s officer who comes to do execution, &c. may open the doors which are shut, and break them, if he cannot have the keys; which

proves, that he ought first to demand them, 7 E. 3.16.'" 100 S.Ct. at 1383.

It should be noted that even the three dissenters in *Payton* acknowledged: "At common law, absent exigent circumstances, entries to arrest could be made only for felony. Even in cases of felony, the officers were required to announce their presence, demand admission, and be refused entry before they were entitled to break doors." 100 S.Ct. 1371, 1395.

An "exigent circumstance" exception exists in Indiana but is restricted to relieving officers from the requirement that they announce their purpose. *Davenport v. State* (1984) Ind., 464 N.E.2d 1302; *Sayre v. State* (1984) 3d Dist., Ind.App., 471 N.E.2d 708; *Cannon v. State* (1980) 3d Dist., Ind.App., 414 N.E.2d 578; *Johnson v. State* (1973) 2d Dist., 157 Ind.App., 105, 299 N.E.2d 194.

I am persuaded that Indiana has not chosen to deviate from the clear "knock and announce" requirements enunciated in *State v. Dusch* (1972) 259 Ind., 507, 289 N.E.2d 515. In *Dusch,* officers executing a search warrant neither knocked nor announced their authority before breaking in the front and rear doors of an apartment. The court left little or no room for interpretation by clearly and succinctly holding:

"There is absolutely no evidence here which would indicate that the occupant of the house acted in a furtive manner, or that he knew of the presence of the police outside, or that he was in the process of attempting to destroy the evidence which the police sought, or even that the amount of the drugs to be searched for was so small or so placed that they lent themselves to easy disposal. Apparently the State would have us hold that the mere fact the object of the search was to be drugs would itself justify an unannounced entry. Such an exception to the knock and announce requirement would be overly broad and would be based on the type of objects searched for rather than on the particular circumstances approach followed by all of the eight justices in *Ker*. The

mere fact that there are drugs involved in the search cannot be held to create a per se exception to the announcement requirement. Exceptions to the entry requirement must be founded on particularity and not on generality. Such a blanket rule will not do for specific situations which call for differentiation.

We hold therefore that the fact that the object of this search was drugs cannot alone be sufficient to excuse the police from announcing their authority and giving the inhabitants a reasonable opportunity to respond as is required by the Constitution of the United States and the Constitution of the State of Indiana. A method of entry to execute a search warrant which has evolved from our common law and which is contained in the definition of reasonable searches and seizures required by both Constitutions compels great respect from both the police and the courts." 289 N.E.2d at 518.

*Ludlow v. State* (1974) 262 Ind. 266, 314 N.E.2d 750, is particularly informative when considered in the light of the State's argument here that exigent circumstances permitted the entry into the motel room. In *Ludlow,* the Court of Appeals, 302 N.E.2d 838, had held that an officer who had knocked, identified himself as a police officer and was denied entry, could make a forcible warrantless entry after hearing sounds of running from inside and fearing the destruction of contraband. Upon transfer, our Supreme Court rejected the State's assertion of exigent circumstances premised upon a fear that the drugs were easily destructible and held:

"The State's argument here misinterprets the scope of that exception. This Court has already rejected the notion that the nature of the items to be seized can alone create automatic exceptions to Fourth Amendment safeguards. *State v. Dusch* (1972) [259 Ind. 507], 289 N.E.2d 515. Moreover, there is no evidence here which would indicate in any way that the people in the house were in the process of destroying the drugs, or were even aware that a raid was immi-

nent. The rationale for the clearly defined exception to the warrant requirement in cases of destruction of evidence is based on the need for quick action because the evidence is actually in the process of being destroyed or is about to be destroyed. *Schmerber v. California* (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. What the State asks here would result in an extension of the exception far beyond the bounds of its rationale." 314 N.E.2d at 752.

The unmistakable message sent in unbroken sequence from *State v. Dusch, supra,* to *Ludlow v. State, supra,* to *Davenport v. State, supra,* is that the knock and announce rule is the law of Indiana. As earlier noted, although an exception may exist with respect to an announcement of purpose in some instances, the existing law requires Indiana police to knock and identify themselves before entering. The time lapse which may be permitted between the knock-announcement and the entry may vary with the circumstances but there must be a knock and an announcement of identity.

It is clear that the spirit as well as the letter of the rule was violated in the instance before us.

The result obtained by the majority necessarily depends upon "exigent circumstances." Those exigent circumstances, in turn, necessarily depend upon the suspicion engendered or knowledge obtained by the unlawful entry made by the same police officers on April 21, 1982.

On April 21, entry was obtained without any knock or announcement whatever. The officers merely used a passkey and walked into the motel suite and only thereafter announced their presence. I believe the majority overstates the evidence when it implies that on April 21 Norma Crabtree was posted as a lookout and was intercepted on her way to destroy drugs. Neither do I find any probable cause significance to a general reference in the record to a prior occasion or occasions when Norma Crabtree refused police entry to a different residence.

I might correctly surmise that these defendants are evildoers, and that on May 4 the police had strong reason to believe that contraband would be found behind the closed and locked doors of that apartment. That surmise, however, does not permit me to concur in an opinion which encourages law officers to effect a clearly illegal entry in order to discover contraband, the knowledge of which is then utilized as probable cause for a "legal" entry, search and seizure.

Neither the Constitution of the United States nor of this State permits law enforcement officials to utilize an unlawful entry and search to provide probable cause for a subsequent entry and search. To do so would emasculate the right against unreasonable searches and seizures. Officers would be encouraged to conduct clearly unconstitutional, destructive, and privacy violative entries if those entries could be used as probable cause to obtain a subsequent warrant or as the exigent circumstances justifying a warrantless entry.

Our case law is quite clear on this point. Evidence seized in a search must be excluded if the probable cause for that search is tainted by prior unlawful conduct. *Morris v. State* (1980) 272 Ind. 467, 399 N.E.2d 740; *Hall v. State* (1976) Ind., 346 N.E.2d 584; *Pirtle v. State* (1975) Ind., 323 N.E.2d 634; *Clark v. State* (1980) 4th Dist., Ind. App., 401 N.E.2d 773; *Stinchfield v. State* (1977) 1st Dist., Ind.App., 367 N.E.2d 1150. Evidence of this nature is admissible only if it was obtained by means independent of the prior tainted evidence or information. *See Myers v. State* (1983) Ind., 454 N.E.2d 861.

In the case before us, the May 4 entry was made without appropriate knock and announcement and was without cognizable exigent circumstances.

The evidence obtained as a result of this entry should have been suppressed. Accordingly, I must vote to reverse the convictions obtained as a result of that evidence.