**S. Anthony LONG, Dean Boerste, Randall K. Bailey, Jeffrey T. Gore and Larry Barr, Appellants–Plaintiffs,**

**v.**

**Mark DURNIL, Indiana State Police and State of Indiana, Appellees– Defendants.**

**No. 49A02–9710–CV–701.**

Court of Appeals of Indiana.

July 24, 1998.

---

D. Robert Webster, Bamberger & Feibleman, Indianapolis, for Appellants–Plaintiffs.

Jeffrey A. Modisett, Attorney General, Andrew L. Hedges, Deputy Attorney General, Indianapolis, for Appellees–Defendants.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

S. Anthony Long, Dean Boerste, Randall K. Bailey, Jeffrey T. Gore and Larry Barr (collectively "Long") appeal the trial court's grant of summary judgment in favor of Mark Durnil, the Indiana State Police and the State of Indiana (collectively "Durnil") in Long's defamation and civil rights action against Durnil.

We affirm in part and reverse in part.

### ISSUES

I. Whether the trial court erred in granting Durnil's summary judgment motion on the defamation count.

II. Whether the trial court erred in granting Durnil's summary judgment motion on the 42 U.S.C. § 1983 count.

### FACTS [1]

The designated facts most favorable to the nonmovants reveal that in the early 1990's, Warrick County Judge Donald Hendrickson received a letter from two Warrick County taxpayers requesting an investigation of possible misconduct by Warrick County officials. Judge Hendrickson appointed Robert Zoss as special prosecutor. A grand jury was convened and it returned three indictments against Warrick County officials and businessmen. Zoss told Judge Hendrickson that a further investigation needed to be conducted. However, Zoss, a practicing attorney in southern Indiana, asked the judge to appoint another special prosecutor and allow him to resign. In December 1993, Judge Hendrickson appointed Boone County prosecutor Rebecca McClure as special prosecutor in the on-going investigation. Indiana State Police Trooper Mark Durnil was also appointed to investigate the allegations of misconduct.

Specifically, McClure and Durnil were appointed to investigate allegations of misconduct involving Anthony Long, the then Warrick County Prosecutor; Dean Boerste, a local businessman; Jeffrey Gore, the then Warrick County Sheriff; and Larry Barr and Randall Bailey, then Warrick County Commissioners and local businessmen. McClure and Durnil's investigation focused on the following five issues: 1) whether Warrick County road crews improperly used county resources to improve a road located on land leased to Long; 2) whether Boerste improperly provided an all-expense paid bear hunting trip to Canada for Long or any other public official as incentive for continued con-

---

1. We heard oral argument on June 2, 1998, in Indianapolis.

tracts with Warrick County; 3) whether Long interfered with a computer corporation's contract with Warrick County when the corporation refused to provide voter registration software to Long; 4) whether a member of Long's staff threatened to withdraw the services of a community service program to a local park because she discovered a van belonging to Long's political opponent parked near the entrance to the park; and 5) whether Warrick County Sheriff Jeffrey Gore, owner of Culligan Water of Evansville, failed to file a conflict of interest statement before receiving a contract to install a water softener at the Warrick County Jail.

Additional issues addressed included: 1) whether Long tampered with the grand jury; 2) whether any misconduct occurred when two county commissioners asked a local businessman for a contribution for the installation of lights at a local baseball diamond; and 3) whether Long threatened to withdraw deposits at Old National Bank if the bank manager did not vote as Long desired on an issue before the Redevelopment Commission Board. During the course of the investigation, McClure filed several requests to extend the term of the grand jury which had been convened when Zoss was the special prosecutor. McClure and Durnil determined that they "would keep that Grand Jury impaneled to hear any further allegations that might be at all inter-connected with earlier allegations that had been made." (R. 195).

In mid-October 1994, two reporters from Evansville newspapers contacted Durnil and asked him about the on-going investigation. The *Evansville Press* subsequently printed an article reporting that Durnil said that "Warrick County Prosecutor Anthony Long, Sheriff Jeff Gore and three other Democrats are the targets of a grand jury investigation into alleged corruption in Warrick County government...." (R. 27). The article also reported several of the specific instances of misconduct which Durnil was investigating, as well as the name of the involved individuals. The *Evansville Courier* printed a similar article the following day.

In November 1994, the Indiana State Police began an internal investigation to determine whether Durnil violated any State Police regulations concerning the release of information to the news media when he spoke with the Evansville reporters. During that investigation, McClure told an investigator that in the course of her investigation, no one had been served with any "target subpoenas pursuant to the Grand Jury's work," and that she was "not prepared to use that word 'target' to define anybody at that point." (R. 190). She further explained that no one in her investigation had been cleared at that point. In January 1995, the Indiana State Police completed the investigation of Durnil and concluded that "in his discussions with the news media, [Durnil] confirmed, discussed and gave opinions concerning this investigation in violation of Section 10 of the Department Regulations." (R. 217). On October 16, 1995, McClure issued a 12 page report wherein she reported that "no probable criminal violations found, this investigation is hereby concluded." (R. 26). It does not appear that McClure ever presented evidence to the grand jury.

On October 11, 1996, Long, Boerste, Gore, Bailey and Barr (collectively "Long") filed a complaint against Durnil, (individually "Officer Durnil"), the Indiana State Police and the State of Indiana (collectively "Durnil") wherein Long alleged that Durnil had both defamed him and violated his civil rights. Long and Durnil both subsequently filed summary judgment motions. After a hearing on the motions, the trial court granted summary judgment in favor of Durnil. Long appeals.

### DECISION

Summary judgment is appropriate if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). Relying on specifically designated evidence, the moving party bears the burden of showing prima facie that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Estate of Pflanz v. Davis,* 678 N.E.2d 1148, 1150 (Ind.Ct.App.1997). If the

moving party meets these two requirements, the burden shifts to the nonmovant to set forth specifically designated facts showing that there is a genuine issue for trial. *Id.* Even if the facts are undisputed, summary judgment is inappropriate where the evidence reveals a good faith dispute as to the inferences to be drawn from those facts. *Id.*

On appeal, we are bound by the same standard as the trial court, and we consider only those matters which were designated at the summary judgment stage. *Id.* at 1151. We liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact for trial. *Dunifon v. Iovino,* 665 N.E.2d 51, 55 (Ind.Ct.App.1996), *trans. denied.* The party that lost in the trial court has the burden to persuade the appellate court that the trial court erred. *Id.*

As a preliminary matter, we note that Long contends that Durnil improperly designated evidentiary material in violation of Ind. Trial Rule 56. We disagree. As our standard of review indicates, T.R. 56(C) requires a moving party for summary judgment to specifically designate to the court all materials on which it relies to support its motion. *Jobes v. Tokheim Corp.,* 657 N.E.2d 145, 147 (Ind.Ct.App.1995). The purpose of this requirement is to substantially limit the scope of materials that trial and appellate courts must review in order to determine the propriety of summary judgment. *Id.* To that end, a party does not comply with T.R. 56(C) merely by designating entire portions of the record. *Id.* However, the form by which a party is to designate evidence is not mandated by the rule. *National Board of Examiners v. American Osteopathic Association,* 645 N.E.2d 608, 615 (Ind.Ct.App.1994). So long as the trial court is advised of the specific material upon which the parties rely, the material may be considered. *Id.*

Here, our review of the record reveals that Durnil properly advised the trial court of the specific materials upon which he relied. Specifically, his designation of evidence in support of his motion includes Long's complaint; McClure's report, which was attached to the complaint and specifically made a part there-of; and the two newspaper articles, which were also attached to the complaint and specifically made parts thereof. We find no error and now proceed to address the merits of this case.

## I. *Defamation*

The elements of defamation are 1) a communication with defamatory imputation, 2) malice, 3) publication, and 4) damages. *Owens v. Schoenberger,* 681 N.E.2d 760, 763 (Ind.Ct.App.1997), *reh'g denied.* A communication is defamatory *per se* if it imputes criminal conduct. *Street v. Shoe Carnival,* 660 N.E.2d 1054, 1058 (Ind.Ct.App. 1996). If the words used are such as to produce upon the minds of those who hear them an impression that the plaintiff was guilty of a crime, then they are actionable, although they may not fully describe an offense. *Id.* at 1059.

Here, Long filed a defamation action against Durnil. Long and Durnil both filed summary judgment motions, and the trial court granted Durnil's motion and denied Long's. Long now contends that the trial court erred in granting Durnil's motion and denying his. Specifically, Long argues that Durnil defamed him when he told Evansville reporters that Long was the target of a grand jury investigation. According to Long, "[t]o tell the press that individuals are 'targets' of a grand jury investigation into 'corruption' in county government is libel *per se* because it imputes criminal activity. . . ." Long's Brief, p. 17. Durnil responds that in "ordinary usage, referring to Long as the 'target' of an investigation is no different than referring to him as the 'subject' of the investigation or the 'focus' of the investigation: these words are all metaphoric ways of stating that Long is being investigated." Durnil's Brief, p. 9.

The determination about whether a communication is defamatory is generally a question of law for the court. *Street,* 660 N.E.2d at 1058. The communication is to be viewed in context and given its plain and natural meaning, according to the idea that it is calculated to convey to whom it is addressed. *Id.* However, the determination is

to be presented to the jury if the communication is susceptible of either a defamatory or non-defamatory interpretation. *Id.*

■ Our review of the designated materials reveals that Durnil told Evansville reporters that Long was the "target[ ] of a grand jury investigation into alleged corruption in Warrick County...." (R. 27). A target of a grand jury investigation is a "person against whom the prosecutor or grand jury has substantial evidence which ostensibly links him to the commission of a crime and who is a putative defendant." *In the Matter of Grand Jury Investigation (90-3-2),* 748 F.Supp. 1188, 1195, n. 9 (E.D.Mich.1990). Therefore, a reasonable trier of fact could conclude that Durnil's words amounted to a charge of criminal activity against Long, and a genuine issue of material fact exists on the issue of whether Durnil's communication was defamatory. *See Street.*

■ Nevertheless, Durnil contends that the designated evidence shows that his statements were true, and truth is a complete defense to a claim of defamation. *See Associates Corporation of North America v. Smithley,* 621 N.E.2d 1116 (Ind.Ct.App. 1993). Our review of the designated materials reveals that Durnil told the Evansville reporters that Long was the "target[ ] of a grand jury investigation into alleged corruption in Warrick County government...." (R. 27). However, special prosecutor McClure stated that "no one had been served with any "target subpoenas pursuant to the Grand Jury's work," and that she was "not prepared to use that word 'target' to define anybody at that point." (R. 190). Therefore, a reasonable trier of fact could conclude that Durnil's statement was untrue, and a genuine issue of material fact exists on the issue of whether Durnil's communication[ was true. Accordingly, the trial court erred in granting Durnil's summary judgment motion on the defamation count.

## II. *Civil Rights—42 U.S.C. § 1983*

Long further contends that the trial court erred in granting Durnil's summary judgment motion on the § 1983 count. We disagree.

■ Section 1983 of Title 42 provides a civil remedy against any person who, under color of state law, subjects a citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the federal Constitution or federal laws. 42 U.S.C. § 1983; *Lake County Juvenile Court v. Swanson,* 671 N.E.2d 429, 433 (Ind.Ct. App.1996), *reh'g denied, trans. denied.* In order to recover damages under § 1983, a plaintiff must show that 1) he held a constitutionally protected right; 2) he was deprived of this right; 3) the defendants acted with reckless indifference to cause this deprivation; and 4) the defendants acted under the color of state law. *Culver–Union Township Ambulance Service v. Steindler,* 629 N.E.2d 1231, 1232–33 (Ind.1994).

■ However, § 1983 does not provide a remedy against states, state entities or state officials sued in their official capacities. *Swanson,* 671 N.E.2d at 433. These parties are not considered "persons" under § 1983. *Will v. Michigan Department of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989); *Swanson.* Therefore, as to the Indiana State Police, the State of Indiana and Durnil acting in his official capacity as a State Police Officer,[2] the trial court did not err in granting Durnil's summary judgment motion.

■ As to Officer Durnil as an individual and a person within the meaning of § 1983,[3] Long contends that Officer "Durnil's conduct in defaming plaintiffs rise[s] to an actionable complaint under § 1983." Long's Brief, p. 22. According to Long, "Durnil's actions interfered with plaintiffs' constitutionally protected right to pursue their property interests in their respective trade or

---

2. Official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. *Crawford v. City of Muncie,* 655 N.E.2d 614, 619 (Ind.Ct. App.1995), *trans. denied.*

3. An officer sued in his personal capacity comes to the court as an individual unlike an official capacity defendant. *Swanson,* 671 N.E.2d at 434. A government official sued in his personal capacity fits within the § 1983 statutory term "person." *Id.*

calling without unlawful actions by a police officer." Long's Brief, p. 21. However, the United States Supreme Court has held that "[d]efamation, by itself, is a tort actionable under the laws of most states, but not a constitutional deprivation." *Siegert v. Gilley,* 500 U.S. 226, 233, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991). *See also Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Business and reputation losses alone do not turn an ordinary defamation claim into a § 1983 claim. *Buckey v. County of Los Angeles,* 968 F.2d 791, 795 (9th Cir.1992), *cert. denied,* 506 U.S. 999, 113 S.Ct. 599, 121 L.Ed.2d 536(19 ). Rather, the plaintiff must join a defamation claim to a recognizable § 1983 wrong such as the denial of equal protection or substantive due process. *Id.* This Long has failed to do. Therefore, the trial court did not err in granting summary judgment in favor of Durnil on Long's § 1983 count.[4]

Affirmed in part and reversed in part.

STATON and FRIEDLANDER, JJ., concur.

---

**4.** Long further asks us to reverse the trial court because Durnil violated Ind.Code 35–34–2–10 which provides in pertinent part as follows:

(a) Except when required to do so by law, a person who has been present at a grand jury proceeding and who knowingly or intentionally discloses:

(1) any evidence or testimony given or produced;

(2) what a grand juror said; or

(3) the vote of any grand juror;

to any other person, except to a person who was also present or entitled to be present at that proceeding or to the prosecuting attorney or his representative, commits unauthorized disclosure of grand jury information, a Class B misdemeanor.

However, our review of the designated materials reveals no evidence that Durnil was present at a grand jury proceeding in this matter. Therefore, he could not have disclosed grand jury information in violation of the statute.