**Damion WILKINS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 02A03–0910–CR–451.**

Court of Appeals of Indiana.

July 27, 2010.

Transfer Granted Oct. 21, 2010.

Stanley L. Campbell, Fort Wayne, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

In this interlocutory appeal, Damion Wilkins ("Wilkins") challenges the denial of his motion to suppress evidence obtained during the execution of a search warrant. We reverse.

### Issues

Wilkins presents two issues for review:[1]

---

1. Wilkins also articulates an issue concerning the propriety of a residential trash search conducted on November 20, 2008. Relying upon *Litchfield v. State*, 824 N.E.2d 356, 364 (Ind.2005), which required a trash search be supported by articulable individualized suspicion, "essentially the same as is required for a 'Terry stop' of an automobile," Wilkins com-

I. Whether evidence should be suppressed because the search warrant was not supported by probable cause; and

II. Whether evidence should be suppressed because the search warrant was executed as a "no-knock" warrant in violation of his constitutional rights.

### Facts and Procedural History

During 2008, Fort Wayne Police began receiving tips that Cornelius Lacey ("Lacey") was selling marijuana and cocaine. They conducted surveillance of a business owned by Lacey and also conducted a trash pull at Lacey's residence on Pointe Center Cove in Fort Wayne. The trash included mail addressed to Wilkins. Investigating officers obtained a search warrant for execution at Lacey's residence and compiled information for the Fort Wayne Emergency Services Team regarding the criminal histories of both Lacey and Wilkins.

On December 5, 2008, the Fort Wayne Police Emergency Services Team arrived at the Pointe Center Cove residence to execute a search warrant directed toward evidence of illegal drugs and weapons. "A number of people," including Lacey and Wilkins, were present inside the residence. (Tr. 20.) Team leader Thomas Strausborger, having been advised of the criminal histories of Lacey and Wilkins, decided to execute the search warrant in a no-knock fashion for officer safety. The door was breached by means of a ramming device, and the officers announced their presence only as they "were gaining entry." (Tr. 14.)

Subsequent to the execution of the search warrant, Wilkins was charged with Unlawful Possession of a Firearm by a Serious Violent Felon, Indiana Code Section 35–47–4–5, and Possession of Marijuana, Indiana Code Section 35–48–4–11. On May 26, 2009, Wilkins moved to suppress evidence obtained in the execution of the search warrant, claiming that the warrant was not supported by probable cause and that the no-knock execution led to a seizure that violated his rights under the United States and Indiana Constitutions and Indiana Code Section 35–33–5–7.

After conducting a hearing, the trial court denied the motion. Wilkins sought permission to file an interlocutory appeal. We accepted jurisdiction and this appeal ensued.

### Discussion and Decision

#### I.A. Standard of Review

 The standard of appellate review of a trial court's denial of a motion to suppress is similar to other sufficiency issues. *Litchfield v. State*, 824 N.E.2d 356, 358 (Ind.2005). We determine whether substantial evidence of probative value exists to support the trial court's ruling. *Id.* We do not reweigh the evidence and we consider conflicting evidence most favorably to the trial court's decision. *Id.* We will affirm the trial court's ruling if it is sustainable on any legal grounds that are apparent in the record. *Richardson v.*

plains that here there was no such basis because the police acted upon a stale and uncorroborated tip from a confidential informant. However, Wilkins did not present argument or evidence on this matter to the trial court such that the trial court could determine either that Wilkins had standing to challenge the trash search or that the information from the confidential informant should have been disregarded. The issue is therefore waived for appellate review. *See Washington v. State*, 840 N.E.2d 873, 880 (Ind.Ct.App.2006) (observing, "a party may not present an argument or issue to an appellate court unless the party raised the same argument or issue before the trial court"), *trans. denied.*

*State,* 848 N.E.2d 1097, 1101 (Ind.Ct.App. 2006), *trans. denied.*

### I.B. Probable Cause for Search Warrant

Wilkins argues that the warrant for the search of Lacey's residence was not supported by probable cause, in violation of the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Article 1, Section 11 of the Indiana Constitution tracks the language of the Fourth Amendment almost verbatim.[2]

▮▮▮ Although the residence of a person other than Wilkins was specified in the warrant, the State has made no assertion at the trial court level that Wilkins lacked standing[3] to present this claim, and may not do so for the first time on appeal. *Everroad v. State,* 590 N.E.2d 567, 569 (Ind.1992). In determining whether a person's Fourth Amendment rights have been violated, the U.S. Supreme Court has abandoned the concept of "standing" and has determined that "a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter,* 525 U.S. 83, 87–88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998). However, analysis under the Indiana Constitution has retained a standing requirement in which "a defendant must establish ownership, control, possession, or interest in either the premises searched or the property seized." *Peterson v. State,* 674 N.E.2d 528, 534 (Ind.1996).

Wilkins has failed to demonstrate an expectation of privacy in the place searched; thus, he cannot succeed upon a Fourth Amendment claim that the warrant to search Lacey's residence was issued absent probable cause. As to the claim under the Indiana Constitution, because the State did not raise lack of standing, we proceed to address Wilkins' argument that the search warrant was issued without probable cause.

▮▮▮ Probable cause is a fluid concept having no precise definition. *Bowles v. State,* 820 N.E.2d 739, 747 (Ind.Ct.App. 2005), *trans. denied.* It must be decided on a fact by fact basis. *Id.* In deciding whether to issue a search warrant, " '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular

---

**2.** Accordingly, Indiana Code Section 35–33–5–2(a) provides in relevant part:

[N]o warrant for search or arrest shall be issued until there is filed with the judge an affidavit:

(1) particularly describing:
 (A) the house or place to be searched and the things to be searched for; or
 (B) particularly describing the person to be arrested;
(2) alleging substantially the offense in relation thereto and that the affiant believes and has good cause to believe that:

 (A) the things as are to be searched for are there concealed; or
 (B) the person to be arrested committed the offense; and
(3) setting forth the facts then in knowledge of the affiant or information based on hearsay, constituting the probable cause.

**3.** "Standing" is defined as a "party's right to make a legal claim or seek judicial enforcement of a duty or right." BLACK'S LAW DICTIONARY 1442 (8th ed. 2004).

place.'" *Jackson v. State,* 908 N.E.2d 1140, 1142 (Ind.2009) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The reviewing court, which includes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision, is to determine whether the magistrate had a "substantial basis" for concluding that probable cause existed. *Id.* We focus upon whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. *Id.* We review the trial court's "substantial basis" determination de novo, while nonetheless affording significant deference to the magistrate's determination. *Id.*

 Here, the following information was set forth in the affidavit that was presented to the issuing judge. On May 20, 2008, Fort Wayne Police received an anonymous tip that marijuana was being sold by the pound from a business located at 5214 Decatur Road in Fort Wayne. On October 30, 2008, an individual arrested for possession of cocaine identified Lacey as the seller of the cocaine, and further advised that he had made numerous purchases of cocaine from Lacey at the Decatur Road location. Lacey's ownership of the business located at 5214 Decatur Road was established through Fort Wayne Police records of prior alarm calls at that address. Surveillance of the business premises revealed multiple brief stops by individuals. After Fort Wayne Police confirmed Lacey's home address, a trash pull

was conducted at that residence. The trash search yielded tobacco mixed with a substance field tested as marijuana.[4]

Based on this information, there was a fair probability that contraband or evidence of a crime would be found at Lacey's residence. Accordingly, there was probable cause for the issuance of the search warrant.

## II. No–Knock Warrant

 Wilkins argues that Indiana Code Section 35–33–5–7 prohibits no-knock warrants in all circumstances. Alternatively, he argues that, in this case, there was insufficient justification for the officers' decision to dispense with the "knock and announce" rule and thus the seizure violated his rights under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution.[5] He further argues that the appropriate remedy for the violation of his Constitutional and statutory rights is exclusion of the evidence.

 In *Beer v. State,* 885 N.E.2d 33 (Ind.Ct.App.2008), we considered the claim that this statutory provision requires police officers to knock and announce their presence and authority in all instances. We initially noted that Indiana Code Section 35–33–5–7 "does not expressly prohibit entry without announcing the law enforcement officer's authority and purpose when there are exigent circumstances or when it would be dangerous to officers or others to make such an announcement." *Id.* at 42. We further observed:

---

4. Wilkins correctly observes that uncorroborated hearsay from a source of unknown credibility, standing alone, is insufficient to support a finding of probable cause and issuance of a search warrant. *Illinois v. Gates,* 462 U.S. 213, 227, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). However, in light of the discovery of marijuana in the trash, the instant determination of probable cause did not rest solely upon uncorroborated hearsay.

5. Under both the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution, there exists a requirement that police knock and announce their authority before conducting a search of a building. *State v. Dusch,* 259 Ind. 507, 512, 289 N.E.2d 515, 517 (1972).

Ind.Code § 35–33–5–7 is not inconsistent with the knock and announce requirements set forth in case law from both the United States Supreme Court and our state courts. Indiana courts have held that it is well settled that the knock and announce requirement under the United States Constitution and the Indiana Constitution need not be adhered to blindly regardless of the particular circumstances confronting the authorities at the time the search is to be conducted. *See Davenport v. State,* 464 N.E.2d 1302, 1305 (Ind.1984).

*Beer,* 885 N.E.2d at 43. Ultimately, we concluded that "Indiana law supports no knock warrants under certain circumstances." *Id.*

■ The Fourth Amendment does not permit a blanket exception to the knock-and-announce requirement because the object of a criminal search is drugs. *Richards v. Wisconsin,* 520 U.S. 385, 387, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). Rather, "[i]n order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Id.* at 394, 117 S.Ct. 1416. The "reasonable suspicion" standard, as opposed to a probable-cause requirement, strikes the appropriate balance between law enforcement concerns at issue and the individual privacy interests affected by no-knock entries. *Id.*

■ Reasonable suspicion exists where the facts known to the officer, and the reasonable inferences arising therefrom, would cause an ordinarily prudent person to believe that knocking and announcing their presence would be dangerous. *Beer,* 885 N.E.2d at 44, n. 10. " 'This showing is not high, but the police should be required

to make it whenever the reasonableness of a no-knock entry is challenged.' " *Id.* (quoting *Richards,* 520 U.S. at 394–95, 117 S.Ct. 1416).

■ Detective Kimberly Seiss testified that, prior to the execution of the search warrant at issue, she prepared for the Emergency Services Team a packet containing the criminal histories of Lacey and Wilkins. Thereby, Officer Strausborger received information that Lacey had been arrested for criminal recklessness in 1994, he had a prior warrant for a bond revocation that stated that he may be armed, and he had been convicted of dealing in cocaine. As to Wilkins, he had been convicted for armed robbery and resisting law enforcement arising from a 2001 home invasion where weapons were involved and Wilkins had fled the scene. These facts and circumstances would give rise to a "reasonable suspicion" that knocking and announcing would be dangerous to the police officers.

■ In some cases, the Indiana Constitution confers greater protections to individual rights than does the Fourth Amendment. *Holder v. State,* 847 N.E.2d 930, 940 (Ind.2006). Although the search and seizure provision found in Article 1, § 11 of the Indiana Constitution tracks the language of the Fourth Amendment, our jurisprudence has focused on whether the actions of the government were "reasonable" under "the totality of the circumstances." *Shotts v. State,* 925 N.E.2d 719, 726 (Ind.2010). "The Indiana Constitution has unique vitality, even where its words parallel federal language." *State v. Gerschoffer,* 763 N.E.2d 960, 965 (Ind.2002) (citing *Ajabu v. State,* 693 N.E.2d 921, 929 (Ind.1998)).

■ "As we consider reasonableness based upon the particular facts of each case, the Court also gives Art. 1, § 11

a liberal construction to angle in favor of protection for individuals from unreasonable intrusions on privacy." *Holder,* 847 N.E.2d at 940 (citing *Gerschoffer,* 763 N.E.2d at 965). It is because of citizen concerns regarding safety, security, and protection that some intrusions upon privacy are tolerated, "so long as they are reasonably aimed toward those concerns." *Id.*

The relevant factors in assessing reasonableness of a seizure turn on a balance of " '1) the degree of concern, suspicion, or knowledge that a violation had occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.' " *Id.* (quoting *Litchfield,* 824 N.E.2d at 361). The burden rests on the State to show the intrusion was reasonable in light of the totality of the circumstances. *Hathaway v. State,* 906 N.E.2d 941, 945 (Ind.Ct.App. 2009), *trans. denied.*

The degree of concern that a violation had occurred was such that a search warrant had properly been issued, as previously discussed. The degree of intrusion, forcible entry with a battering ram, was strong. Likewise, the need for officer safety was strong. However, the circumstances relative to officer safety were equally present when the requesting officer obtained the search warrant. Despite the compilation of a "packet" containing the criminal histories of Wilkins and Lacey, this was not submitted to a neutral magistrate to authorize a "no-knock" warrant. Instead, the decision not to comply with the knock-and-announce rule was left in the hands of one individual, not a neutral party but one charged with serving the warrant.

When "exigent" circumstances are present, an officer may decide to dispense with the knock-and-announce requirement. *See Davenport v. State,* 464 N.E.2d 1302, 1305 (Ind.1984) (explaining, "the police are not always required to give notice of their purpose if exigent circumstances exist"). Exigent circumstances exist if someone inside, aware of someone outside, engages in activity that justifies the officers in the belief that an escape or the destruction of evidence is being attempted. *Id.* (citing *Ker v. California,* 374 U.S. 23, 47, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) and *Cannon v. State,* 414 N.E.2d 578 (Ind.Ct.App.1980)).

Here, no circumstances bearing upon officer safety or escape arose after the issuance of the warrant and before its execution. There has been no allegation of furtive movement, attempted flight, or destruction of evidence. Under the totality of the circumstances, we find the unilateral decision to dispense with the knock-and-announce rule unreasonable under Article 1, § 11 of the Indiana Constitution where the relevant facts could have been presented in application for a "no-knock" warrant.

Accordingly, we must decide whether the evidence obtained in the search should be excluded. The State urges that we follow *Hudson v. Michigan,* 547 U.S. 586, 590, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006), which discussed the appropriateness of the exclusionary rule where a "no-knock" entry concededly violated the Fourth Amendment. At the outset, the Court observed that "indiscriminate application of the exclusionary rule" had been rejected, and it was applicable only when its deterrence benefits outweigh its substantial social costs. *Id.* at 591, 126 S.Ct. 2159. The Court recognized three interests protected by the knock-and-announce rule: (1) human life and limb, (2) protection of property and (3) privacy and dignity that may be offended by sudden entry. *Id.* at 594, 126 S.Ct. 2159. At the

same time, the Court recognized, "[w]hat the knock-and-announce rule has never protected ... is one's interest in preventing the government from seeing or taking evidence described in a warrant." *Id.* Finding that the interests violated had "nothing to do with the seizure of the evidence," the Court found the exclusionary rule to be inapplicable. *Id.* Finally, after discussing the availability of 42 U.S.C. § 1983 suits for Fourth Amendment violations, the Court assumed "civil liability" to be an effective deterrent.[6] *Id.* at 597, 126 S.Ct. 2159.

 Our Indiana Legislature has provided for a civil remedy to redress injury caused by a wrongful police entry. *See* Ind.Code § 35–33–5–7(e) (providing in relevant part, "A person or persons whose property is wrongfully damaged or whose person is wrongfully injured by any law enforcement officer or officers who wrongfully enter may recover such damage from the responsible authority and the law en-

forcement officer or officers as the court may determine.")[7] However, the fact that such a remedy exists does not preclude our suppression of evidence when the totality of the circumstances indicates that suppression is the most effective deterrent.

 In this case, the criminal histories of the targeted individuals were known well in advance of the execution of the search warrant. Nonetheless, the officer seeking the warrant did not advise a neutral judicial officer of the circumstances that would arguably have supported a "no-knock" authorization. Rather, the critical decision was made by a person charged with a duty of law enforcement.

Further, it was admittedly routine and systemic for the Emergency Service Team officers, as opposed to a neutral magistrate, to decide to serve warrants in a "no-knock" manner.[8] Although police officers at times confront emerging exigent circumstances, to which an emergency re-

---

6. Section 1983 provides a civil remedy against a person who, under color of state law, subjects a United States citizen to the deprivation of any rights, privileges, or immunities secured by the federal Constitution or federal laws. *Long v. Durnil,* 697 N.E.2d 100, 105 (Ind.Ct.App.1998), *trans. denied.* In order to recover damages under § 1983, a plaintiff must show that (1) he held a constitutionally protected right, (2) he was deprived of this right, (3) the defendant acted with reckless indifference to cause this deprivation, and (4) the defendant acted under color of state law. *Id.* Section 1983 was designed to prevent the states from violating the Constitution and certain federal statutes and to compensate injured plaintiffs for deprivations of those federal rights. *Culver–Union Tp. Ambulance Serv. v. Steindler,* 629 N.E.2d 1231, 1233 (Ind.1994).

7. This civil damages remedy does not purport to provide a remedy equal to a § 1983 action for damages arising from a violation of rights under the United States Constitution or federal law.

8. Sergeant Strausborger testified that he was an Emergency Services team supervisor "in charge of planning the execution of the search warrant" at issue and that he had "created a tactical plan." (Tr. 13.) He described his understanding of the typical evaluative process: "We're given the opportunity of what we do is we look at all the circumstances involved. Mainly the criminal histories and pasts of the subjects that are involved, the propensity for violence, the propensity for fleeing, to execute in a no knock fashion, we're required by the Supreme Court, under the Fourth Amendment, to knock and announce our presence unless there's an exception to the knock and announce. One of the exceptions that we are afforded the opportunity is for the apprehension of peril, which is stating that if we can show or if we believe that there is a possibility of weapons inside of the house, a propensity for violence from the subjects that we're executing the search warrant on, that we can choose to not announce prior, and wait the appropriate amount of time prior to breaching the front door." (Tr. 13–14.)

sponse is appropriate under the Indiana Constitution, the instant situation did not involve exigencies arising when there was no opportunity to seek judicial sanction for a "no-knock" entry. As Sergeant Strausborger explained, "no-knock" entries into a residence increase the potential for violence against police officers due to misapprehension of the circumstances by the occupants. In light of our Indiana Supreme Court's pronouncement in Holder, acknowledging that intrusions based upon security concerns will be tolerated only "so long as they are reasonably aimed toward those concerns," 847 N.E.2d at 940, we believe that such entries should remain rare and, where practicable, subject to review by a detached and neutral judicial officer.

Here, we are not concerned with a decision to disregard the "knock and announce" requirement predicated upon emerging exigent circumstances. Rather, we are concerned with an emergency response team policy that authorizes a unilateral decision to enter into a home without knocking when there has been no independent determination regarding the circumstances. As such, we find that suppression is the appropriate remedy for dealing with this Indiana constitutional violation.

### Conclusion

The search warrant at issue was supported by probable cause. Indiana Code Section 35–33–5–7 does not constitute a blanket prohibition upon no-knock warrants in this State. The "no-knock" execution of the search warrant was supported by reasonable suspicion and thus no Fourth Amendment violation is established. However, under the totality of the circumstances, the "no-knock" execution was unreasonable under the Indiana Constitution. We find suppression of the evi-

dence to be an appropriate remedy in the particular circumstances of this case.

Reversed.

MAY, J., concurs.

BARNES, J., concurs in result with opinion.

BARNES, Judge, concurring in result.

I respectfully concur in result. I agree that the evidence recovered from Lacey's residence ought to be suppressed.

I concur that there was a "no-knock" violation here and that we ought to suppress the evidence because of that violation, notwithstanding *Hudson v. Michigan.* None of us wants in any way or at any time to jeopardize the safety of a police officer. However, as the majority articulately points out, there was no reason here why the officers could not have applied for a "no-knock" warrant before a neutral magistrate. All of the reasons given for the "no-knock" at the scene were known in advance, and the police encountered no other problems that would have hindered their entry.

As for whether we ought to diverge from *Hudson* and continue to apply the exclusionary rule for "no-knock" entries that violate the Indiana Constitution, it is well-settled that "[e]ven where an Indiana constitutional provision is substantially textually coextensive with that from another jurisdiction, ... we may part company with the interpretation of the Supreme Court of the United States or any other court based on the text, history, and decisional law elaborating the Indiana constitutional right." *Ajabu v. State,* 693 N.E.2d 921, 929 (Ind.1998). *See also* Randall T. Shepard, *Second Wind for the Indiana Bill of Rights,* 22 Ind. L. Rev. 575, 586 (1989) (arguing that protection of civil liberties must come not only from the federal constitution and United States Supreme

Court, but also state constitutions and state courts). Thus, *Hudson* does not control here. The Indiana Supreme Court adopted the exclusionary rule for violations of the Indiana Constitution well before the United States Supreme Court mandated use of the rule in the states for violations of the federal constitution in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). In 1922, the Indiana Supreme Court held, "If ... property was secured by search and seizure under the pretext of a search warrant, which was invalid for any reason, then the property so seized could not be used as evidence against the appellant, and its admission over his objection was prejudicial error." *Callender v. State*, 193 Ind. 91, 96, 138 N.E. 817, 818 (1922).

Five years after *Callender*, the Indiana Supreme Court held that, where an officer failed to announce the basis of his authority before conducting a search of the premises pursuant to a warrant, the evidence thereafter obtained was inadmissible. *Speybroeck v. State*, 200 Ind. 69, 72–73, 155 N.E. 817, 818 (1927). The court has applied the exclusionary rule to similar "no-knock" violations of the Indiana Constitution in later years as well. *See State v. Dusch*, 259 Ind. 507, 510–11, 289 N.E.2d 515, 517 (1972). Adopting what could be considered the "minimum" federal standards necessarily erodes the exclusionary rule as it has been interpreted and applied by the Indiana Supreme Court. Any chink in that exclusionary armor ought to come from them.

The majority also makes a telling point, I believe, when they highlight the fact that the possible penalties for a federal Fourth Amendment violation include civil remedies under 42 U.S.C. § 1983 and its considerable clout. This potential informed a significant part of the *Hudson* majority's reasoning. Although Indiana Code Sec-

tion 35–33–5–7 provides for some damages in the event of an unlawful entry to serve a search warrant, it does not have the teeth that § 1983 does, and thus its deterrent effect, in my view, is considerably less formidable than that of its federal cousin.

Because I conclude that we ought to order suppression of the evidence on the basis of the "no-knock" entry, I find it unnecessary to address the legality of the search warrant that led to the entry in the first place. Thus, I do not join in part I.B. of the majority opinion. I do have some qualms about whether the trash pull at Lacey's residence, which formed a considerable part of the probable cause for the search warrant, complied with the "reasonable suspicion" mandate of *Litchfield v. State*, 824 N.E.2d 356, 364 (Ind.2005). Those reservations need not be addressed in light of our holding regarding the "no-knock" violation.

For these reasons, I concur in result.