**Cornelius Tyrone LACEY, Sr., Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 02A05–0910–CR–562.

Court of Appeals of Indiana.

July 27, 2010.

Transfer Granted Oct. 21, 2010.

Harold W. Myers, Wyss, Morgan & Myers, P. Stephen Miller, Fort Wayne, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

In this interlocutory appeal, Cornelius Tyrone Lacey, Sr. ("Lacey") challenges the denial of his motion to suppress evidence obtained during the execution of a search warrant. We reverse.

### Issues

Lacey presents two issues for review:

I. Whether evidence should be suppressed because the search warrant was not supported by probable cause; and

II. Whether evidence should be suppressed because the search warrant was executed as a "no-knock" warrant in violation of his rights under the Indiana Constitution.

### Facts and Procedural History

During 2008, Fort Wayne Police began receiving tips that Lacey was selling marijuana and cocaine. They conducted surveillance of a business owned by Lacey and also conducted a trash pull at Lacey's residence on Pointe Center Cove in Fort Wayne. The trash included mail addressed to Damion Wilkins ("Wilkins"). Investigating officers obtained a search warrant for execution at Lacey's residence and compiled information for the Fort Wayne Emergency Services Team regarding the criminal histories of both Lacey and Wilkins.

On December 5, 2008, the Fort Wayne Police Emergency Services Team arrived at the Pointe Center Cove residence to execute a search warrant directed toward evidence of illegal drugs and weapons. "A number of people," including Lacey and Wilkins, were present inside the residence. (Tr. 20.) Team leader Thomas Strausborger, having been advised of the criminal histories of Lacey and Wilkins, decided to execute the search warrant in a "no-knock" fashion for officer safety. The door was breached by means of a ramming device, and the officers announced their presence only as they "were gaining entry." (Tr. 14.)

Subsequent to the execution of the search warrant, Lacey was charged with Unlawful Possession of a Firearm by a Serious Violent Felon, Indiana Code Section 35–47–4–5, Possession of Marijuana, Indiana Code Section 35–48–4–11, and Maintaining a Common Nuisance, Indiana Code Section 35–48–4–13(b). On May 26, 2009, Lacey moved to suppress evidence obtained in the execution of the search warrant, claiming that the warrant was not supported by probable cause and that the "no-knock" execution led to a seizure that violated his rights under the United States and Indiana Constitutions and Indiana Code Section 35–33–5–7.

After conducting a hearing, the trial court denied the motion. Lacey sought permission to file an interlocutory appeal. We accepted jurisdiction and this appeal ensued.

### Discussion and Decision

*I.A. Probable Cause for Search Warrant*

The standard of appellate review of a trial court's denial of a motion to

suppress is similar to other sufficiency issues. *Litchfield v. State*, 824 N.E.2d 356, 358 (Ind.2005). We determine whether substantial evidence of probative value exists to support the trial court's ruling. *Id.* We do not reweigh the evidence and we consider conflicting evidence most favorably to the trial court's decision. *Id.* We will affirm the trial court's ruling if it is sustainable on any legal grounds that are apparent in the record. *Richardson v. State*, 848 N.E.2d 1097, 1101 (Ind.Ct.App. 2006), trans. denied.

### I.B. Probable Cause Analysis

Lacey argues that the warrant for the search of his residence was not supported by probable cause, in violation of the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Article 1, Section 11 of the Indiana Constitution tracks the language of the Fourth Amendment almost verbatim.[1]

■ Probable cause is a fluid concept having no precise definition. *Bowles v. State*, 820 N.E.2d 739, 747 (Ind.Ct.App. 2005), *trans. denied.* It must be decided on a fact by fact basis. *Id.* In deciding whether to issue a search warrant, " '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *Jackson v. State*, 908 N.E.2d 1140, 1142 (Ind.2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The reviewing court, which includes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision, is to determine whether the magistrate had a "substantial basis" for concluding that probable cause existed. *Id.* We focus upon whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. *Id.* We review the trial court's "substantial basis" determination de novo, while nonetheless affording significant deference to the magistrate's determination. *Id.*

■ Here, the following information was set forth in the affidavit that was presented to the issuing judge. On May 20, 2008, Fort Wayne Police received an anonymous tip that marijuana was being sold by the pound from a business located at 5214 Decatur Road in Fort Wayne. On October 30, 2008, an individual arrested for possession of cocaine identified Lacey as the seller of the cocaine, and further advised that he had made numerous purchases of cocaine from Lacey at the Deca-

---

1. Accordingly, Indiana Code Section 35–33–5–2(a) provides in relevant part:

 [N]o warrant for search or arrest shall be issued until there is filed with the judge an affidavit:
 (1) particularly describing:
 (A) the house or place to be searched and the things to be searched for; or
 (B) particularly describing the person to be arrested;

 (2) alleging substantially the offense in relation thereto and that the affiant believes and has good cause to believe that:
 (A) the things as are to be searched for are there concealed; or
 (B) the person to be arrested committed the offense; and
 (3) setting forth the facts then in knowledge of the affiant or information based on hearsay, constituting the probable cause.

tur Road location. Lacey's ownership of the business located at 5214 Decatur Road was established through Fort Wayne Police records of prior alarm calls at that address. Surveillance of the business premises revealed multiple brief stops by individuals. After Fort Wayne Police confirmed Lacey's home address, a trash pull was conducted at that residence. The trash search yielded tobacco mixed with a substance field tested as marijuana.[2]

Based on this information, there was a fair probability that contraband or evidence of a crime would be found at Lacey's residence. Accordingly, there was probable cause for the issuance of the search warrant.

## II. No–Knock Warrant

Lacey argues that there was insufficient justification for the officers' decision to dispense with the "knock and announce" rule and thus the seizure violated his rights under Article 1, Section 11 of the Indiana Constitution.[3] He further argues

that the appropriate remedy for the violation is exclusion of the evidence.

In *Beer v. State*, 885 N.E.2d 33 (Ind.Ct. App.2008), we considered the claim that this statutory provision requires police officers to knock and announce their presence and authority in all instances. We initially noted that Indiana Code Section 35–33–5–7 "does not expressly prohibit entry without announcing the law enforcement officer's authority and purpose when there are exigent circumstances or when it would be dangerous to officers or others to make such an announcement." *Id.* at 42. We further observed:

> Ind.Code § 35–33–5–7 is not inconsistent with the knock and announce requirements set forth in case law from both the United States Supreme Court and our state courts. Indiana courts have held that it is well settled that the knock and announce requirement under the United States Constitution and the

2. Lacey correctly observes that uncorroborated hearsay from a source of unknown credibility, standing alone, is insufficient to support a finding of probable cause and issuance of a search warrant. *Illinois v. Gates*, 462 U.S. 213, 227, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). However, in light of the discovery of marijuana in the trash, the instant determination of probable cause did not rest solely upon uncorroborated hearsay.

3. Under the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution, there exists a requirement that police knock and announce their authority before conducting a search of a building, although it is obviated in some circumstances. *State v. Dusch*, 259 Ind. 507, 512, 289 N.E.2d 515, 517 (1972). On appeal, Lacey concedes that the Fourth Amendment would not require suppression of the evidence obtained after the "no-knock" entry onto his premises.

The Fourth Amendment does not permit a blanket exception to the knock-and-announce requirement because the object of a criminal search is drugs. *Richards v. Wisconsin*, 520 U.S. 385, 387, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). Rather, "[i]n order to justify a

"no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Id.* at 394, 117 S.Ct. 1416. The "reasonable suspicion" standard, as opposed to a probable-cause requirement, strikes the appropriate balance between law enforcement concerns at issue and the individual privacy interests affected by no-knock entries. *Id.*

Reasonable suspicion exists where the facts known to the officer, and the reasonable inferences arising therefrom, would cause an ordinarily prudent person to believe that knocking and announcing police presence would be dangerous. *Beer v. State*, 885 N.E.2d 33, 44 n. 10 (Ind.Ct.App.2008). " 'This showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged.' " *Id.* (quoting *Richards*, 520 U.S. at 394–95, 117 S.Ct. 1416).

Indiana Constitution need not be adhered to blindly regardless of the particular circumstances confronting the authorities at the time the search is to be conducted. *See Davenport v. State*, 464 N.E.2d 1302, 1305 (Ind.1984).

*Beer*, 885 N.E.2d at 43. Ultimately, we concluded that "Indiana law supports no knock warrants under certain circumstances." *Id.*

Under the Fourth Amendment, officers need only a reasonable suspicion that entry without knocking and announcing would be dangerous, futile, or inhibit effective investigation. *Richards*, 520 U.S. at 394, 117 S.Ct. 1416. In some cases, the Indiana Constitution confers greater protections to individual rights than does the Fourth Amendment. *Holder v. State*, 847 N.E.2d 930, 940 (Ind.2006). Although the search and seizure provision found in Article 1, § 11 of the Indiana Constitution tracks the language of the Fourth Amendment, our jurisprudence has focused on whether the actions of the government were "reasonable" under "the totality of the circumstances." *Shotts v. State*, 925 N.E.2d 719, 726 (Ind.2010). "The Indiana Constitution has unique vitality, even where its words parallel federal language." *State v. Gerschoffer*, 763 N.E.2d 960, 965 (Ind.2002) (citing *Ajabu v. State*, 693 N.E.2d 921, 929 (Ind.1998)).

"As we consider reasonableness based upon the particular facts of each case, the Court also gives Art. 1, § 11 a liberal construction to angle in favor of protection for individuals from unreasonable intrusions on privacy." *Holder*, 847 N.E.2d at 940 (citing Gerschoffer, 763 N.E.2d at 965). It is because of citizen concerns regarding safety, security, and protection that some intrusions upon privacy are tolerated, "so long as they are reasonably aimed toward those concerns." *Id.*

The relevant factors in assessing reasonableness of a seizure turn on a balance of " '1) the degree of concern, suspicion, or knowledge that a violation had occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.' " *Id.* (quoting *Litchfield*, 824 N.E.2d at 361). The burden rests on the State to show the intrusion was reasonable in light of the totality of the circumstances. *Hathaway v. State*, 906 N.E.2d 941, 945 (Ind.Ct.App. 2009), *trans. denied.*

Detective Kimberly Seiss testified that, prior to the execution of the search warrant at issue, she prepared for the Emergency Services Team a packet containing the criminal histories of Lacey and Wilkins. Thereby, Sergeant Strausborger received information that Lacey had been arrested for criminal recklessness in 1994, he had a prior warrant for a bond revocation that stated that he may be armed, and he had been convicted of dealing in cocaine. As to Wilkins, he had been convicted for armed robbery and resisting law enforcement arising from a 2001 home invasion where weapons were involved and Wilkins had fled the scene.

The degree of concern that a violation had occurred rose to the level of probable cause, such that a search warrant had properly been issued, as previously discussed. The degree of intrusion, forcible entry with a battering ram, was strong. Likewise, the need for officer safety was strong. However, the circumstances relative to officer safety were equally present when the requesting officer obtained the search warrant. Despite the compilation of a "packet" containing the criminal histories of Wilkins and Lacey, this was not submitted to a neutral magistrate to authorize a "no-knock" warrant. Instead, the decision to disregard the knock-and-

announce rule was left in the hands of one individual, not a neutral party but one charged with serving the warrant.

 When "exigent" circumstances are present, an officer may decide to dispense with the knock-and-announce requirement. *See Davenport v. State,* 464 N.E.2d 1302, 1305 (Ind.1984) (explaining, "the police are not always required to give notice of their purpose if exigent circumstances exist"). Exigent circumstances exist if someone inside, aware of someone outside, engages in activity that justifies the officers in the belief that an escape or the destruction of evidence is being attempted. *Id.* (citing *Ker v. California,* 374 U.S. 23, 47, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) and *Cannon v. State,* 414 N.E.2d 578 (Ind.Ct.App.1980)).

Here, no circumstances bearing upon officer safety or escape arose after the issuance of the warrant and before its execution. There has been no allegation of furtive movement, attempted flight, or destruction of evidence. Under the totality of the circumstances, we find the unilateral decision to dispense with the knock-and-announce rule unreasonable under Article 1, Section 11 of the Indiana Constitution where the relevant facts could have been presented in application for a "no-knock" warrant.

 Accordingly, we must decide whether the evidence obtained in the search should be excluded. The State urges that we follow *Hudson v. Michigan,* 547 U.S. 586, 590, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006), which discussed the appropriateness of the exclusionary rule where a "no-knock" entry concededly violated the Fourth Amendment. At the outset, the Court observed that "indiscriminate application of the exclusionary rule" had been rejected, and it was applicable only when its deterrence benefits outweigh its substantial social costs. *Id.* at 591, 126 S.Ct. 2159. The Court recognized three interests protected by the knock-and-announce rule: (1) human life and limb, (2) protection of property and (3) privacy and dignity that may be offended by sudden entry. *Id.* at 594, 126 S.Ct. 2159. At the same time, the Court recognized, "[w]hat the knock-and-announce rule has never protected ... is one's interest in preventing the government from seeing or taking evidence described in a warrant." *Id.* Finding that the interests violated had "nothing to do with the seizure of the evidence," the Court found the exclusionary rule to be inapplicable. *Id.* Finally, after discussing the availability of 42 U.S.C. § 1983 suits for Fourth Amendment violations, the Court assumed "civil liability" to be an effective deterrent. *Id.* at 597, 126 S.Ct. 2159.[4]

Our Indiana Legislature has provided for a civil remedy to redress injury caused by a wrongful police entry. *See* Ind.Code § 35–33–5–7(e) (providing in relevant part, "A person or persons whose property is wrongfully damaged or whose person is wrongfully injured by any law enforcement officer or officers who wrongfully enter may recover such damage from the re-

---

4. Section 1983 provides a civil remedy against a person who, under color of state law, subjects a United States citizen to the deprivation of any rights, privileges, or immunities secured by the federal Constitution or federal laws. *Long v. Durnil,* 697 N.E.2d 100, 105 (Ind.Ct.App.1998), *trans. denied.* In order to recover damages under § 1983, a plaintiff must show that (1) he held a constitutionally protected right, (2) he was deprived of this right, (3) the defendant acted with reckless indifference to cause this deprivation, and (4) the defendant acted under color of state law. *Id.* Section 1983 was designed to prevent the states from violating the Constitution and certain federal statutes and to compensate injured plaintiffs for deprivations of those federal rights. *Culver–Union Twp. Ambulance Serv. v. Steindler,* 629 N.E.2d 1231, 1233 (Ind.1994).

sponsible authority and the law enforcement officer or officers as the court may determine.")[5] However, the fact that such a remedy exists does not preclude our suppression of evidence when the totality of the circumstances indicates that suppression is the most effective deterrent.

In this case, the criminal histories of the targeted individuals were known well in advance of the execution of the search warrant. Nonetheless, the officer seeking the warrant did not advise a neutral judicial officer of the circumstances that would arguably have supported a "no-knock" authorization. Rather, the critical decision was made by a person charged with a duty of law enforcement.

Further, it was admittedly routine and systemic for the Emergency Service Team officers, as opposed to a neutral magistrate, to decide to serve warrants in a "no-knock" manner.[6] Although police officers at times confront emerging exigent circumstances, to which an emergency response is appropriate under the Indiana Constitution, the instant situation did not involve exigencies arising when there was no opportunity to seek judicial sanction for a "no-knock" entry. As Sergeant Strausborger explained, "no-knock" entries into a residence increase the potential for violence against police officers due to misapprehension of circumstances by the occupants. In light of our Indiana Supreme Court's pronouncement in *Holder*, acknowledging that intrusions based upon security concerns will be tolerated only "so long as they are reasonably aimed toward those concerns," 847 N.E.2d at 940, we believe that such entries should remain rare and, where practicable, subject to review by a detached and neutral judicial officer.

Here, we are not concerned with a decision to disregard the "knock and announce" requirement predicated upon emerging exigent circumstances. Rather, we are concerned with an emergency response team policy that authorizes a unilateral decision to enter into a home without knocking when there has been no independent determination regarding the circumstances. As such, we find that suppression is the appropriate remedy for dealing with this Indiana constitutional violation.

### Conclusion

There was probable cause to support the issuance of the search warrant. Nonetheless, the "no-knock" execution of the search warrant was unreasonable under the Indiana Constitution. We find suppression of the evidence to be the most

---

**5.** This civil damages remedy does not purport to provide a remedy equal to a § 1983 action for damages arising from a violation of rights under the United States Constitution or federal law.

**6.** Sergeant Strausborger testified that he was an Emergency Services Team supervisor "in charge of planning the execution of the search warrant" at issue and that he had "created a tactical plan." (Tr. 13.) He described his understanding of the typical evaluative process: "We're given the opportunity of what we do is we look at all the circumstances involved. Mainly the criminal histories and pasts of the subjects that are involved, the propensity for violence, the propensity for fleeing, to execute in a no knock fashion, we're required by the Supreme Court, under the Fourth Amendment, to knock and announce our presence unless there's an exception to the knock and announce. One of the exceptions that we are afforded the opportunity is for the apprehension of peril, which is stating that if we can show or if we believe that there is a possibility of weapons inside of the house, a propensity for violence from the subjects that we're executing the search warrant on, that we can choose to not announce prior, and wait the appropriate amount of time prior to breaching the front door." (Tr. 13–14.)

appropriate remedy in the particular circumstances of this case.

Reversed.

MAY, J., concurs.

BARNES, J., concurs in result with opinion.

**BARNES, Judge, concurring in result.**

I respectfully concur in result for the reasons outlined in my concurring opinion in *Wilkins v. State,* 930 N.E.2d 652 (Ind. Ct.App.2010) (Barnes, J., concurring in result).